COURT OF CRIMINAL APPEALS NO. _CR-02-0755_

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS

## FROM

## CIRCUIT COURT OF ___HOUSTON___ COUNTY, ALABAMA

CIRCUIT COURT NO. ___CC-02-1141 and 1142   Volume I___

CIRCUIT JUDGE ___Larry Anderson___

Type of Conviction / Order Appealed From: ___Rape I and Sexual Abuse I___

Sentence Imposed: ___10 years in each case consecutive, $1,000.00 Fine, $500.00___
___V. C. in each case___

Defendant Indigent: [X] YES    [ ] NO

___Stanley Lee Caudill___

NAME OF APPELLANT

___Shaun McGhee    MCG 062      702-1744___
(Appellant's Attorney)                    (Telephone No.)
___188 N. Foster Suite 101___
(Address)
___Dothan,          Alabama          36303___
(City)              (State)              (Zip Code)

V.

## STATE OF ALABAMA

NAME OF APPELLEE

(State represented by Attorney General)
NOTE: If municipal appeal, indicate above, and enter
name and address of municipal attorney below.

_____

_____

(For Court of Criminal Appeals Use Only)

EXHIBIT A

INDEX OF CLERK'S RECORD

| | |
|---|---|
| CASE ACITONS | 1 – 10 |
| INDICTMENT | 11 – 14 |
| WAIVER OF ARRAIGNMENT | 15 |
| ORDER TO PRODUCE | 16 |
| MOTION FOR DISCOVERY | 17 – 18 |
| MOTION FOR DISCOVERY GRANTED | 19 |
| NOTICE OF STATE'S INTENT TO SEEK ADDITIONAL PENALTY | 20 |
| MOTION TO CONSOLIDATE | 21 |
| MOITON TO CONSOLIDATE GRANTED | 22 |
| STATE'S JURY CHARGE NUMBER 1 | 23 |
| JUDGMENT | 24 – 25 |
| EXECUTED BONDSMAN'S PROCESS | 26 – 29 |
| INVESTIGATION AND REPORT | 30 – 35 |
| SENTENCINGS | 36 – 37 |
| NOTICE OF APPEAL AND MOTION FOR APPELLANT BOND | 38 |
| APPOINTMENT OF COUNSEL, FREE TRANSCRIPT ORDERED | 39 |
| NOTICE OF APPEAL | 40 – 41 |
| DOCKETING STATMENT | 42 – 44 |
| REPORTER'S TRANSCRIPT ORDER | 45 – 47 |
| REQUEST AND ORDERS FOR TIME EXTENSION | 48 – 53 |
| COURT REPORTER'S INDEX OF EXHIBITS | 54 |
| STATE'S EXHIBIT NUMBER 1 | 55 |
| STATE'S EXHIBIT NUMBER 2 | 56 – 66 |
| STATE'S EXHIBIT NUMBER 3 | 67 – 76 |
| STATE'S EXHIBIT NUMBER 4 | 77 – 78 |
| STATE'S EXHIBIT NUMBER 5 | 79 |
| COURT REPORTER'S TRANSCRIPT | 1 – 169 |
| CERTIFICATE OF COMPLETION | 249 |

```
ACR0372            ALABAMA JUDICIAL INFORMATION SYSTEM    CASE: CC 2002 001141.00
OPER: PAS                  CASE ACTION SUMMARY
PAGE:   1                  CIRCUIT   CRIMINAL              RUN DATE: 09/04/2002
========================================================================
   THE CIRCUIT COURT OF  HOUSTON                                   JUDGE: LKA
```

ATE  OF  ALABAMA              VS    CAUDILL STANLEY LEE
                                    747 POUNCEY POND RD
CASE: CC 2002 001141.00
                                    DALEVILLE, AL  36322 0000

```
DOB: 11/30/1958        SEX: M  RACE: W  HT: 6 00  WT: 200   HR: BRO EYES: GRN
SSN: 312703127    ALIAS NAMES:
========================================================================
CHARGE01: RAPE 1ST DEGREE       CODE01: RAP1  LIT: RAPE 1ST DEGRE TYP: F #: 001
OFFENSE DATE: 04/17/2001              AGENCY/OFFICER: 0380100 OFF B H
```

DATE WAR/CAP ISS:                     DATE ARRESTED: 06/12/2002
DATE    INDICTED: 08/26/2002          DATE    FILED: 09/04/2002
DATE    RELEASED: ~~06/12/2002~~      DATE  HEARING:
BOND    AMOUNT: $10,000.00 S               SURETIES: ~~THOMPSON BONDS~~

DATE 1: 10/16/2002  DESC: ARRG        TIME: 0900 A
DATE 2: 12/09/2002  DESC: JTRL        TIME: 0830 A

TRACKING NOS: DC 2002 001512 00  /                        /

   DEF/ATY: BLUMENFELD JACK A        TYPE: A                    TYPE:
           P O BOX 6264
              DOTHAN        AL 36302           *12-12-02 Recommitted*
                                                      *on BP*
   PROSECUTOR: VALESKA DOUGLAS A

```
========================================================================
OTH CSE: DC200200151200 CHK/TICKET NO: 0102004691    GRAND JURY: 000000011
COURT REPORTER: --------------  SID NO:    000000000
    STATUS: BOND         DEMAND: Y                          OPER: PAS
========================================================================
TE       ACTIONS, JUDGEMENTS, AND NOTES
========================================================================
```

| DATE | ACTIONS, JUDGEMENTS, AND NOTES |
|------|-------------------------------|
| 10-4-02 | WAIVER OF ARRAIGNMENT |
| | ~~10-16~~ ~~2002~~ |
| | ~~Within 14 days of this order, the state and the~~ |
| | ~~defendant will make available for inspection~~ |
| | ~~and copying all materials discoverable~~ |
| | ~~under the Alabama Rules of Criminal Procedure.~~ |
| | ~~In addition, the state will make any~~ |
| | ~~exculpatory materials available to the defense.~~ |
| | ~~The state will make the materials at the~~ |
| | ~~District Attorney's office and the defense~~ |
| | ~~will do likewise at defense counsel's office.~~ |
| | *[signature] CIRCUIT JUDGE* |
| 10-18-02 | *notd.* |
| | *J Blumenfeld + DA* |
| 10-17-2002 | Motion for Discovery |
| 10/21/02 | Motion for discovery granted as allowed by the Rules of Criminal Procedure. *Larry K. Anderson, Judge* |

*(10-23-02 ST — JB ☒ a)*

12-4-2002  Notice of State's Intent to seek additional penalty

12-4-2002  Motion to consolidate

2-5-02  State's motion to consolidate is granted.

Anderson, Judge

JURY CONVICTION

## IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA

CRIMINAL DIVISION

VS.

*Stanley Lee Caudill*    CASE NO. *CC- 2002-1141*

The Defendant having been indicted and arraigned upon the Indictment on a charge of *Rape, 1st Degree*, and heretofore having plead not guilty thereto the case was tried before a jury composed of *Glenn E. Dickerson* as foreperson and eleven others. The Jury having been duly empanelled, sworn and charged by the Court according to law, with the Defendant being present in open court with his attorney at each and every stage of proceedings, said jury has now on this date pursuant to their oath found the Defendant guilty of *Sexual Abuse, First* ~~as charged in the Indictment~~ (a lesser included offense of that charge in the Indictment).

In accordance with the verdict of the Jury, Defendant is hereby adjudged guilty of *Sexual Abuse, First* Defendant being asked if he/she had anything to say why sentence of law should not be pronounced upon him/her, and Defendant says nothing.

**IT IS THEREFORE ORDERED AND ADJUDGED BY THE COURT** that the Defendant is guilty of said charge.

(X) A Sentence hearing is set for the *10th* day of *January*, 2003 at o'clock *A*M.

DONE, this the *9th* day of *December*, 2002. *Deft. continued on same bond with the condition of no contact with victims and deft. to stay in custody until evaluated by C.C.O.* *Larry K. Anderson*

*12/9/02*
*8 Days*

CIRCUIT JUDGE

*12-10-02*
*recd*
*CCO*

## SENTENCING ORDER

AS PUNISHMENT, DEFENDANT IS HEREBY FORMALLY SENTENCED:

( ) to hard labor for Houston County for a term of _____.

(X) to the penitentiary of the State of Alabama for a term of *10* years. ( ) FHOA

On the 30th day after the Clerk transmits to the Department of Corrections a copy of this judgment entry and sentence, if the Department has not directed the Sheriff where the Defendant shall be taken for confinement, the Sheriff is hereby ordered to transport Defendant forthwith to the Department's receiving center at Kilby/Tutweiler (circle) and effectuate the transfer of the Defendant to the custody of the Department. In the event the Department refuses to accept the Defendant in compliance with state law, the Sheriff is ordered to secure the Defendant to the property at the Department's receiving center.

Said sentence shall run (X) consecutive or ( ) concurrent with case number (s) _____.

( ) said sentence is suspended for _____ years on the condition of good behavior and payment of all fines, costs, and restitution.

(X) The Defendant is hereby given credit for the days spent incarcerated pending trial.

Defendant is also ordered to pay:

(X) A fine of $ __1000__
(X) A Victim Compensation Assessment of $ __500__
(X) All Court Costs.
( ) Restitution of $ _____ to _____.
( ) Drug Demand Reduction Act Assessment of $1,000.00.
( ) Alabama Forensics Sciences Trust Fund $100.00.

**ADDITIONAL SENTENCE PROVISION ORDERED ARE:**

( ) Completion of a substance abuse program CRO
( ) The Department of Public Safety is ordered to comply with Alabama Code 13A-12-290 by suspending Defendant's drivers license for six months.
( ) Continued on same bond.
( ) Appeal bond is set at $ _____.
( ) Indigency status granted and free transcript is ordered.

**PROBATION:**

(X) Defendant applies for probation.
( ) Defendant waives application for probation.
( ) Probation hearing is set for the _____ day of _____ 20__ at _____
( ) Defendant to remain on same bond pending probation hearing

DONE this the _10th_ day of _Jan._ ,20 _02_.

1-10-2003  After hearing, probation is denied.  (See order on Probation Sheet)

Ql-10-03 cct

_____
Larry K. Anderson, Judge
CIRCUIT JUDGE

ACR0369    A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E R

CASE ACTION SUMMARY
CONTINUATION

CASE: CC 2002 001141.00
JUDGE ID:  LKA

| ATE OF ALABAMA | VS | CAUDILL STANLEY LEE |

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| 1-13-2003 | Notice of appeal and motion for appellate bond |
| 1-17-03 | Atty Blumenfeld allowed to withdraw. Shaun McGee is appointed to represent Defendant on appeal. No appeal bond. Free transcript ordered. |
|  | 1-21-02 N: JB DA CR, Dft S McG    Anderson, Judge |
| 1-21-03 | Mailed Clerk's Notice of Appeal to CCA, AG, DA, CR, Deft, and S. McGhee |
| 4-17-2003 | Due to workload, the Circuit Clerk's Office is granted an additional 7 days on filing transcript with Court of Criminal Appeals. |
| 4-21-03 | Larry K. Anderson, Judge |
|  | N CCA. AG  S McG |

```
ACR0372               ALABAMA JUDICIAL INFORMATION SYSTEM      CASE: CC 2002 001142.00
OPER: PAS                    CASE ACTION SUMMARY
PAGE:   1                    CIRCUIT  CRIMINAL                 RUN DATE: 09/04/2002
==============================================================================
 I THE CIRCUIT COURT OF   HOUSTON                                    JUDGE: LKA

  ATE OF  ALABAMA              VS        CAUDILL STANLEY
                                         747 POUNCEY POND RD
 CASE: CC 2002 001142.00
                                         DALEVILLE, AL   36322 0000

DOB: 11/30/1953       SEX: M  RACE: W  HT: 6 00  WT: 200   HR: BRO EYES: GRN
SSN: 312703127   ALIAS NAMES:
==============================================================================
CHARGE01: SEXUAL ABUSE 1ST     CODE01: SXA1  LIT: SEXUAL ABUSE 1 TYP: F #: 001
OFFENSE DATE: 04/17/2001              AGENCY/OFFICER: 0380100 OFF B H

DATE WAR/CAP ISS:                    DATE ARRESTED: 06/12/2002
DATE    INDICTED: 08/26/2002         DATE    FILED: 09/04/2002
DATE    RELEASED: 06/15/2002         DATE  HEARING:
BOND    AMOUNT:     $10,000.00 S        SURETIES: THOMPSON BONDS

DATE 1: 10/16/2002  DESC: ARRG          TIME: 0900 A
DATE 2: 12/09/2002  DESC: JTRL          TIME: 0830 A

TRACKING NOS: DC 2002 001511 00  /                      /

     DEF/ATY: BLUMENFELD JACK A       TYPE: A                          TYPE: D
              P O BOX 6264                          12-12-02  Recommitted on BP
                                                                   00000
              DOTHAN         AL 36302

PROSECUTOR: VALESKA DOUGLAS A
==============================================================================
OTH CSE: DC200200151100 CHK/TICKET NO: 0102004691     GRAND JURY: 000000012
COURT REPORTER: ---------------  SID NO:   000000000
 F STATUS: BOND                 DEMAND: Y                           OPER: PAS
==============================================================================
 TE        ACTIONS,  JUDGEMENTS,  AND  NOTES
```

| | |
|---|---|
| 10-4-02 | WAIVER OF ARRAIGNMENT |
| | ——10-16——, 2002—— |
| | (Within 14 days of this order, the state and the |
| | defendant will make available for inspection |
| | and copying all materials discoverable |
| | under the Alabama Rules of Criminal Procedure. |
| | In addition, the state will make any |
| | exculpatory materials available to the defense. |
| | The state will make its materials at the |
| | District Attorney's office and the defense |
| | will do likewise at defense counsel's office. |
| 10-18-02 | roff            Sem Holley |
| | Blumenfeld  CIRCUIT JUDGE |
| | + DA |
| 10-17-2002 | Motion for Discovery |
| | OVER |

State of Alabama vs. Stanley Caudill                                    CC-02-1142

Case 1:05-cv-00785-MEF-WC    Document 9-2    Filed 09/27/2005    Page 9 of 128

7

10-21-02 - Motion for discovery is granted as allowed by the Rules of
          Criminal Procedure.

10-23-02 - D -                         Larry K. Anderson, Judge
(JB, D, a)

12-4-2002  Notice of State's Intent to seek additional Penalty

12-4-2002  Motion to consolidate

JURY CONVICTION

## IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA

CRIMINAL DIVISION

VS.

_Stanley Caudill_

CASE NO. _CC-2002/142_

The Defendant having been indicted and arraigned upon the Indictment on a charge of _Sexual Abuse, 1st_ , and heretofore having plead not guilty thereto the case was tried before a jury composed of _Glenn E. Dickerson_ as foreperson and eleven others. The Jury having been duly empanelled , sworn and charged by the Court according to law , with the Defendant being present in open court with his attorney at each and every stage of proceedings, said jury has now on this date pursuant to their oath found the Defendant guilty of _Sexual Abuse, 1st_ as charged in the Indictment (a lesser included offense of that charge in the Indictment).

In accordance with the verdict of the Jury, Defendant is hereby adjudged guilty of _Sexual Abuse, 1st_ . Defendant being asked if he/she had anything to say why sentence of law should not be pronounced upon him/her, and Defendant says nothing .

**IT IS THEREFORE ORDERED AND ADJUDGED BY THE COURT** that the Defendant is guilty of said charge.

(X) A Sentence hearing is set for the _10_ day of _January_, 20_03_ at _9_ o'clock _A_ M.

**DONE, this the** _9th_ day of _December_ , 2002.

12/9 8PDavis

_____
CIRCUIT JUDGE

## SENTENCING ORDER

AS PUNISHMENT, DEFENDANT IS HEREBY FORMALLY SENTENCED:

( ) to hard labor for Houston County for a term of _____ .

(X) to the penitentiary of the State of Alabama for a term of _10_ years. ( ) FHOA

On the 30th day after the Clerk transmits to the Department of Corrections a copy of this judgment entry and sentence, if the Department has not directed the Sheriff where the Defendant shall be taken for confinement, the Sheriff is hereby ordered to transport Defendant forthwith to the Department's receiving center at Kilby/Tutweiler (circle) and effectuate the transfer of the Defendant to the custody of the Department. In the event the Department refuses to accept the Defendant in compliance with state law, the Sheriff is ordered to secure the Defendant to the property at the Department's receiving center.

Said sentence shall run (X) consecutive or ( ) concurrent with case number (s)
_____

( ) said sentence is suspended for _____ years on the condition of good behavior and payment of all fines, costs, and restitution.

(X) The Defendant is hereby given credit for the days spent incarcerated pending trial.

Defendant is also ordered to pay:

(X) A fine of $ _1000.00_
(X) A Victim Compensation Assessment of $ _500.00_.
(X) All Court Costs.
( ) Restitution of $ _____ to _____
( ) Drug Demand Reduction Act Assessment of $1,000.00.
( ) Alabama Forensics Sciences Trust Fund $100.00.

## ADDITIONAL SENTENCE PROVISION ORDERED ARE:

( ) Completion of a substance abuse program CRO :
( ) The Department of Public Safety is ordered to comply with Alabama Code 13A-12-290 by suspending Defendant's drivers license for six months.
( ) Continued on same bond.
( ) Appeal bond is set at $ _____.
( ) Indigency status granted and free transcript is ordered.

## PROBATION:

( ) Defendant applies for probation.
(X) Defendant waives application for probation.
( ) Probation hearing is set for the _____ day of _____ 20__ at _____
( ) Defendant to remain on same bond pending probation hearing

DONE this the _10th_ day of _Jan_ ,200_3_...

01-10-03 CAC,

_____
Larry K. Anderson, Judge
CIRCUIT JUDGE

ACR0369   A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E R

CASE ACTION SUMMARY
CONTINUATION

CASE: CC 2002 001142.00
JUDGE ID:   LKA

STATE OF ALABAMA                    VS   CAUDILL STANLEY

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|------|------------------------------|
| 1-13-2003 | Notice of appeal and motion for appellate bond |
| 1-17-03 | See Order on CC-02-1141. |
| 1-21-03 | Mailed Clerk's Notice of Appeal to CCA, AG, DA, CR, Deft, and S. McGhee. |
| 4-17-2003-- | Due to workload, the Circuit Clerk's Office is granted an additional 7 days on filing transcript with Court of Criminal Appeals. |
| | 4-21-03 _Larry K. Anderson, Judge_ |
| | N: CCA, AG, S.Mᶜ |

## INDICTMENT

The State of Alabama }
Houston County

**CIRCUIT COURT
TWENTIETH JUDICIAL
AUGUST TERM, 2002**

### COUNT 1

The Grand Jury of said county charge that, before the finding of this indictment, STANLEY CAUDILL, whose name is otherwise unknown to the Grand Jury, a male, did engage in sexual intercourse with HEATHER MICHELLE AUSTIN, a female, by forcible compulsion, in violation of 13A-6-61 of the Code of Alabama, against the peace and dignity of the State of Alabama.

Douglas Albert Valeska
District Attorney

THE STATE OF ALABAMA
Houston County

Witnesses for Agency No. 0102004691

HEATHER MICHELLE AUSTIN, 426 COUNTY RD. 551, NEW BROCKTON, AL 36351
DEVELLUS BUTLER, DOTHAN POLICE DEPARTMENT, DOTHAN, AL 36303
BRIAN CHERRY, POLICE DEPT, DOTHAN, AL 36301
BRIAN HARVIN, DOTHAN P.D., DOTHAN, AL 36301

THE CIRCUIT COURT
Twentieth Judicial Circuit

THE STATE
vs.
STANLEY CAUDILL

Charges: 1. RAPE FIRST DEGREE (FORCIBLE COMPULSION)

## A TRUE BILL

_____
Foreman of the Grand Jury

Presented to the presiding Judge in open court foreman of the
Grand Jury, in the presence of _____ Grand Jurors and
filed in open court by order of the court on this the
day of _____, 20. _____.

_____
CLERK

## INDICTMENT

### NO PROSECUTOR

Upon the arrest of Defendant let him be admitted to bail on
giving bond in the sum of

_____ $10,000 _____ Dollars

With security to be approved by the Sheriff.

_____
Judge Presiding

Grand Jury No. 120

## INDICTMENT

The State of Alabama  }
Houston County

CIRCUIT COURT
TWENTIETH JUDICIAL
**AUGUST TERM, 2002**

### COUNT 1

The Grand Jury of said county charge that, before the finding of this indictment, STANLEY CAUDILL, whose name is otherwise unknown to the Grand Jury, did subject RACHEL ANN TAYLOR to sexual contact by forcible compulsion, in violation of Section 13A-6-66 of the Code of Alabama, against the peace and dignity of the State of Alabama.

Douglas Albert Valeska
District Attorney

THE STATE OF ALABAMA
Houston County

## THE CIRCUIT COURT
Twentieth Judicial Circuit

THE STATE
vs.
STANLEY CAUDILL

Witnesses for Agency No. 0102004691

DEVELLUS BUTLER, DOTHAN POLICE DEPARTMENT, DOTHAN, AL  36303
BRIAN CHERRY, POLICE DEPT, DOTHAN, AL  36301
BRIAN HARVIN, DOTHAN P.D., DOTHAN, AL  36301
RACHEL ANN TAYLOR, 718 WET MAIN ST., DALEVILLE, AL  36322

Charges: 1.  SEXUAL ABUSE FIRST DEGREE

#120

## A TRUE BILL

_Jane P. Lettufield_
Foreman of the Grand Jury

Presented to the presiding Judge in open court foreman of the Grand Jury, in the presence of _14_ Grand Jurors and filed in open court by order of the court on this the _26_ day of _Aug._ 20. _02_

_Judy Byrd_
CLERK

## INDICTMENT

### NO PROSECUTOR

Upon the arrest of Defendant let him be admitted to bail on giving bond in the sum of

_$10,000_ _____ Dollars

With security to be approved by the Sheriff.

Judge Presiding

| State of Alabama<br>Unified Judicial System<br><br>Form CR-9    Rev. 3/95 | **PLEA OF NOT GUILTY AND WAIVER OF ARRAIGNMENT** | Case Number<br>CC-02-7141<br>CC-02-7142 |

IN THE ____Circuit____ COURT OF ____Houston____, ALABAMA
(Circuit, District, or Municipal)                    (Name of County or Municipality)

☐ STATE OF ALABAMA v. ____Stanley Caudill____, Defendant

Comes now, the defendant in the above-styled matter, and to the offense charged enters a plea of

☒ Not Guilty
☐ Not Guilty by Reason of Mental Disease or Defect
☐ Not Guilty and Not Guilty by Reason of Mental Disease or Defect

Defendant acknowledges receipt of the copy of the charge against him/her and further waives the right to have an arraignment at which the defendant is present in person, or at which the defendant is represented by an attorney.

But, the defendant specifically and expressly reserves the right upon the filing hereof to hereafter, but before trial or before such date as may be set by the court, to interpose any defenses, objections, or motions which the defendant had the right as a matter of law or rule to interpose in this cause, prior to the filing hereof.

Defendant's date of birth is ____11-30-58____    Defendant's age is ____43____
The defendant is not eligible for consideration by the court for youthful offender status as provided by law.

____10-3-02____                    _____
Date                                Defendant

____10-3-02____                    _____
Date                                Attorney for Defendant

This is to certify that I am the attorney for the defendant in this matter, and that I have fully explained this form and all matters set forth herein, and pertaining hereto, to the defendant. I further state to the court that I have explained to the defendant his right to be arraigned in person and his right to have me represent him at arraignment. I further certify to the court that my client hereby knowingly, voluntarily, and intelligently waives these rights after a full and complete explanation of each and every one of them to him/her by me. BOTH MYSELF AND THE DEFENDANT UNDERSTAND THAT I AM RESPONSIBLE FOR ASCERTAINING WHAT DATE, IF ANY, HAS BEEN SET BY THE COURT FOR THE MAKING OR FILING OF ANY DEFENSES, OBJECTIONS, OR MOTIONS. I FURTHER UNDERSTAND THAT I AM RESPONSIBLE FOR NOTIFYING MY CLIENT OF THE DATE HIS/HER CASE IS SET FOR TRIAL, AND THAT I HAVE ADVISED AND INFORMED HIM/HER THAT IN THE EVENT HE/SHE FAILS TO APPEAR ON THE DATE HIS/HER CASE IS SET FOR TRIAL, ALL APPROPRIATE LEGAL ACTION WILL BE TAKEN BY THE COURT AGAINST THE DEFENDANT AND HIS/HER BOND. I further certify to the court that I have advised my client that he/she is responsible for obtaining the date his/her case is set for trial in this matter and that in the event he/she fails to appear on the date his/her case is set for trial all appropriate legal action will be taken by the court against the defendant and his/her bond, and I hereby certify that the defendant knows that he/she is personally responsible for obtaining the date his/her case is set for trial and for being present in court on that date.

____10-3-02____                    _____
Date                                Attorney for Defendant Signature

                                    ____Jack A. Blumenfeld____
I certify that I served a copy of the foregoing    Printed or Typed Attorney's Name
plea and waiver of arraignment on the Prosecutor
by mailing/delivering a copy of the same to him/her on:    ____P.O. Box 6264; Dothan Al 36302____

_____                    Address
Date

This is to certify that my attorney has explained each and every matter and right set forth in this form and I have completely and fully read and do so understand each and every matter set forth in this form. I further state to the court that I do not wish to be personally present at an arraignment in this matter and do not want to have an attorney represent me at an arraignment and WITH FULL KNOWLEDGE OF EACH OF THESE RIGHTS HEREBY EXPRESSLY WAIVE SUCH RIGHTS. I further state to the court that I have been informed of the charge against me and have received a copy of the charge.

____10-3-02____        **FILED**        _____
Date                OCT 4 2002        Defendant Signature

Filed in office this date _____        _____ By_____
                                                    Clerk

Judy Byrd, CLERK
HOUSTON CO., AL

| 10-4-02 | WAIVER OF ~~ARRAIGNMENT~~ |
| | 10-16 2002 |
| | Within 14 days of this order, the state and the |
| | defendant will make available for inspection |
| | and copying all materials discoverable |
| | under the Alabama Rules of Criminal Procedure. |
| | In addition, the state will make any |
| | exculpatory evidence available to the defense. |
| | The state will make its materials at the |
| | District Attorney's office and the defense |
| | will do likewise at defense counsel's office. |
| 10-18-02 | moot |

| STATE OF ALABAMA | * | IN THE CIRCUIT COURT OF |
| V. | * | HOUSTON COUNTY, ALABAMA |
| STANLEY CAUDILL | * | CRIMINAL DIVISION |
| DEFENDANT. | * | CASE NO. CG-02-1141    A |
| | | CC-02-1142 |

## MOTION FOR DISCOVERY

Comes now the Defendant, Stanley Caudill, by and through his undersigned attorney, and moves this Honorable Court to order that the State disclose the following:

1. The names and addresses of all witnesses against the Defendant;

2. The names and addresses of all witnesses known to the State having information exculpatory to the Defendant;

3. Copies of all written statements taken in the course of the investigation of this case by the State or any officer, agent, investigator acting on its behalf;

4. The substance of any and all oral statements made to the State, its officers, investigators, or agents in the course of the investigation of this case or either exculpatory to the Defendant or upon which the State intends to rely in the prosecution of this case;

5. The production of any and all other objects or things in the possession of the State or known or obtainable by it, its officers, investigators, or agents, exculpatory of the Defendant or upon which the State intends to rely in the prosecution of this case;

6. The production of any results or reports of physical or mental examinations or scientific tests or experiments;

7. Any and all tape recordings & stenographic transcriptions of admissions, confession & statements of the Defendant given at any time or place to any officer. of the Sheriffs Department (ABI), the District Attorney or any representative of that office, or to any other law enforcement officer or agent;

8. Any and all tangible objects, books, papers or documents, currency, weapons, pictures, etc. obtained from the Defendant or any other person related to the charges again the Defendant;

9. Any and all evidence which is exculpatory of the defendant and of which the State is aware or becomes aware.

Respectfully submitted,

_____
Jack A. Blumenfeld (BLE003)
Attorney for Defendant
P.O. Box 6264
Dothan, AL  36302
(334) 793-9167


## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on the District Attorney by hand-delivering same to his office in the Houston County courthouse, Dothan, Alabama, this 17th day of October, 2002.

_____
Of  Counsel


FILED

OCT 1 7 2002

JUDY BYRD, CLERK
HOUSTON CO., AL.

| 10/21/02 | Motion for discovery granted as allowed by the Rules of Criminal Procedure. |

(10-23-02-*J*) —          *Larry K. Anderson, Judge*
  *(JE SD (1)*

20

| STATE OF ALABAMA | ) | IN THE CIRCUIT COURT OF |
| V. | ) | HOUSTON COUNTY, ALABAMA |
| _STANLEY LEE CAUDILL_<br>DEFENDANT | ) | CASE NO. _CC 2002 - 1141, - 1142_ |

### NOTICE OF STATE'S INTENT
### TO SEEK ADDITIONAL PENALTY

Comes now the State of Alabama, pursuant to §13A-5-6 of the Code of Alabama, and

notifies the defendant that the State intends to seek an additional penalty for the commission of a

felony in which a firearm or deadly weapon was used or attempted to be used.

Dated this _4th_ day of _DECEMBER_ 2002.

**FILED**

DEC 0 4 2002

_____
Assistant District Attorney

JUDY BYRD, CLERK
HOUSTON CO., AL

### CERTIFICATE OF SERVICE

I, Eric Davis, Assistant District Attorney of the 20th Judicial Circuit, hereby certify that I
have served a copy of the foregoing on _____Jack Blumenfeld_____,
attorney for defendant, by placing a copy of the same in his/her box at the Houston County
Courthouse this _4th_ day of _December_____2002.

_____
Assistant District Attorney

STATE OF ALABAMA      \*      IN THE CIRCUIT COURT OF

V.      \*      HOUSTON COUNTY, ALABAMA

*STANLEY LEE CAUDILL*      \*      CASE NO. *CC 2002-1141, -1142*

## MOTION TO CONSOLIDATE

Comes now the State of Alabama, by and through the District Attorney for the Twentieth

Judicial Circuit, and moves this Honorable Court pursuant to Rule 13.3(c) of the Alabama Rules

of Criminal Procedure to consolidate the above styled cases for trial and for reason shows as

follows:

1. Each of the above styled cases charges the Defendant with *rape 1st and sexual abuse 1st occurring on the same date and time.*

2. The offenses are the same in character.

3. The offenses are based on the same type conduct.

4. The offenses were a part of a common scheme or plan.

Wherefore premises considered the State moves this Honorable Court to consolidate the

above styled cases for trial.

Submitted this the *4th* day of _____*December*_____, 2002.

_____
Eric C. Davis
Assistant District Attorney

**FILED**

DEC 04 2002

JUDY BYRD, CLERK
HOUSTON CO. AL

## CERTIFICATE OF SERVICE

I, Eric C. Davis, do hereby certify that I have this date served a copy of the foregoing

upon the Honorable _____*Jack Blumenfeld*_____, by placing a copy

of the same in his/her courthouse box on this the *4th* day of _____*December*_____.

2002.

_____
Eric C. Davis
Assistant District Attorney

22

12-5-02 State's motion to consolidate is granted.

Anderson, Judge

STATE OF ALABAMA          *     IN THE CIRCUIT COURT OF

VS.                       *     HOUSTON COUNTY, ALABAMA

STANLEY LEE CAUDILL       *     CASE NO. CC 2002-1141 & 1142

### STATE'S JURY CHARGE NO 1

"Forcible compulsion" includes not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in a sexual act against that person's will." "Factors to be weighed in that determination would include '[t]he respective ages of the victim and accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress."

Exparte Howell, 636 So.2d 1260, 1262, (Ala. 1993) (quoting another source).

GIVEN_____

REFUSED___X____

*Anderson, Judge*

*Filed 12/9/02*
*Anderson, Judge*

24

## JURY CONVICTION

### IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA

CRIMINAL DIVISION

VS.

_Stanley Lee Caudle_          CASE NO. _CC- 2002-1141_

The Defendant having been indicted and arraigned upon the Indictment on a charge of _Rape, 1st Degree_, and heretofore having plead not guilty thereto the case was tried before a jury composed of _Glenn E. Dickerson_ as foreperson and eleven others. The Jury having been duly empanelled, sworn and charged by the Court according to law, with the Defendant being present in open court with his attorney at each and every stage of proceedings, said jury has now on this date pursuant to their oath found the Defendant guilty of _Sexual Abuse, First_ ~~as charged in the Indictment~~ (a lesser included offense of that charge in the Indictment).

In accordance with the verdict of the Jury, Defendant is hereby adjudged guilty of _Sexual Abuse, First_ Defendant being asked if he/she had anything to say why sentence of law should not be pronounced upon him/her, and Defendant says nothing.

**IT IS THEREFORE ORDERED AND ADJUDGED BY THE COURT** that the Defendant is guilty of said charge.

A Sentence hearing is set for the _10th_ day of _January_, 20_03_ at o'clock _P_.M.

9

DONE, this the _9th_ day of _December_, 2002. _Deft. continued on same bond with the condition of no contact with victims and deft. to stay in custody until evaluated by C.C.O._

_Larry K. Anderson_
_____
CIRCUIT JUDGE

12/9/02

JURY CONVICTION

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

STATE OF ALABAMA

CRIMINAL DIVISION

VS.

*Stanley Caudill*

CASE NO. *CC - 2002/142*

The Defendant having been indicted and arraigned upon the Indictment on a charge of *Sexual Abuse, 1st* , and heretofore having plead not guilty thereto the case was tried before a jury composed of *Glenn E Dickerson* as foreperson and eleven others. The Jury having been duly empanelled, sworn and charged by the Court according to law, with the Defendant being present in open court with his attorney at each and every stage of proceedings, said jury has now on this date pursuant to their oath found the Defendant guilty of *Sexual Abuse, 1st* as charged in the Indictment (a lesser included offense of that charge in the Indictment).

In accordance with the verdict of the Jury, Defendant is hereby adjudged guilty of *Sexual Abuse, 1st* . Defendant being asked if he/she had anything to say why sentence of law should not be pronounced upon him/her, and Defendant says nothing.

**IT IS THEREFORE ORDERED AND ADJUDGED BY THE COURT** that the Defendant is guilty of said charge.

9 X A Sentence hearing is set for the *10* day of *January*, 20*03* at 9 o'clock *A* M.

DONE, this the *9th* day of *December*, 2002.

*Tony K. Anderson*
CIRCUIT JUDGE

12/9 8 Days

CIRCUIT COURT OF HOUSTON COUNTY

STATE OF ALABAMA   VS CAUDILL STANLEY LEE
          747 POUNCEY POND RD

          DALEVILLE, AL   36322 0000

          THOMPSON BONDS
          JACK STACEY

WHEREAS, THE SURETIES ON THE BAIL IN THE ABOVE-STYLED CASE HAVE
EXPRESSED THEIR WISH TO SURRENDER THE DEFENDANT TO THE CUSTODY OF THE
SHERIFF OR JAILER AND;

WHEREAS, THE CLERK OF COURT HAS CHECKED THE RECORDS AND HAS FOUND
THAT THE ABOVE-STYLED CASE IS STILL PENDING; AND THAT THE DEFENDANT
OR HIS OR HER SURETIES HAVE NOT BEEN DISCHARGED OF THEIR OBLIGATIONS;
OR THAT THE RECORDS IN THE ABOVE-STYLED CASE REFLECT THAT THE DEFENDANT
HAS FAILED TO APPEAR ON THE OBLIGATION OF BAIL AS REQUIRED AND A
WARRANT HAS BEEN ISSUED FOR THE ARREST OF THE DEFENDANT.

NOW, THEREFORE, THIS PROCESS IS ISSUED, AS REQUIRED BY LAW, GIVING THE
RIGHT TO THE SURETIES (BONDSMEN) TO ARREST THE DEFENDANT AT ANY PLACE
WITHIN THE STATE OF ALABAMA, OR ALLOWING THE SURETIES TO AUTHORIZE
ANOTHER PERSON TO ARREST THE DEFENDANT BY AN ENDORSEMENT IN WRITING ON
THIS DOCUMENT BELOW OR ON AN ATTACHMENT TO THIS DOCUMENT.   THE SURETY
OR BONDSMAN SHALL FORTHWITH, AFTER THE ARREST, TAKE THE DEFENDANT TO
THE JAIL, AS CUSTODIAN THEREOF.

ISSUED THIS 12 DAY OF   DECEMBER , 2002.

                              _Judy Byrd_
                              JUDY BYRD
                              CLERK OF COURT

--------------------------------------------------------------

                    BONDSMAN RETURN

ON THIS __12th__ DAY OF __December__, __2002__, AT
__2:00 Pm__ (TIME), I __Jim Dickerson__
(BONDSMAN/AGENT FOR __Thompson Bonds__ SURETY)
SURRENDERED THE DEFENDANT TO THE __Houston Co. Jail__
JAIL.

                              _signature_
                              SIGNATURE OF BONDSMAN/SURETY

THIS PROCESS MUST BE RETURNED TO THE CLERK OF COURT WITHIN FIVE (5)
DAYS AFTER EXECUTED.

OPERATOR: AMC
PREPARED: 12/12/2002  C/O Joan James
          Subject Already in Jail Per Judge Anderson on this Case

## NOTICE TO BONDSMAN OR BONDSMAN'S DESIGNEE

(1) WHEN NOTIFIED BY THE CLERK OF COURT TO RETURN THIS PROCESS, YOU MUST RETURN IT WITHIN FIVE (5) DAYS OF RECEIVING IT.

(2) EXECUTION OF THIS PROCESS AFTER THE DEFENDANT HAS BEEN DISCHARGED IS AN ILLEGAL ARREST.

## NOTICE TO THE JAILER

UPON RECEIPT OF THE BONDSMAN'S PROCESS, YOU MUST RETURN THIS PROCESS TO THE CLERK OF COURT.

CHARGE: RAPE 1ST DEGREE        BOND AMOUNT:      $10,000.00

## IDENTIFICATION OF ACCUSED PERSON

NAME OF ACCUSED PERSON: CAUDILL STANLEY LEE  PHONE NUMBER:

SSN: 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 DOB: 11301958     AGE: 044    RACE: W SEX: M HT: 600

WT: 200 HR: BRO EY: GRN OTHER:

ADDR:                              EMPLOYER/ADDR/PHONE:

## WITNESSES

Recommitted By C/O Jean Jones

Date 12/12 20 02

OPERATOR: AMC
PREPARED: 12/12/2002

CIRCUIT COURT OF HOUSTON COUNTY

STATE OF ALABAMA VS CAUDILL STANLEY
747 POUNCEY POND RD

DALEVILLE, AL  36322 0000

THOMPSON BONDS
JACK STACEY

WHEREAS, THE SURETIES ON THE BAIL IN THE ABOVE-STYLED CASE HAVE
EXPRESSED THEIR WISH TO SURRENDER THE DEFENDANT TO THE CUSTODY OF THE
SHERIFF OR JAILER AND,

WHEREAS, THE CLERK OF COURT HAS CHECKED THE RECORDS AND HAS FOUND
THAT THE ABOVE-STYLED CASE IS STILL PENDING; AND THAT THE DEFENDANT
OR HIS OR HER SURETIES HAVE NOT BEEN DISCHARGED OF THEIR OBLIGATIONS;
OR THAT THE RECORDS IN THE ABOVE-STYLED CASE REFLECT THAT THE DEFENDANT
HAS FAILED TO APPEAR ON THE OBLIGATION OF BAIL AS REQUIRED AND A
WARRANT HAS BEEN ISSUED FOR THE ARREST OF THE DEFENDANT.

NOW, THEREFORE, THIS PROCESS IS ISSUED, AS REQUIRED BY LAW, GIVING THE
RIGHT TO THE SURETIES (BONDSMEN) TO ARREST THE DEFENDANT AT ANY PLACE
WITHIN THE STATE OF ALABAMA, OR ALLOWING THE SURETIES TO AUTHORIZE
ANOTHER PERSON TO ARREST THE DEFENDANT BY AN ENDORSEMENT IN WRITING ON
THIS DOCUMENT BELOW OR ON AN ATTACHMENT TO THIS DOCUMENT.  THE SURETY
OR BONDSMAN SHALL FORTHWITH, AFTER THE ARREST, TAKE THE DEFENDANT TO
THE JAIL, AS CUSTODIAN THEREOF.

ISSUED THIS 12 DAY OF  DECEMBER , 2002.

*Judy Byrd*

JUDY BYRD
CLERK OF COURT

---

BONDSMAN RETURN

ON THIS ___12th___ DAY OF __December__, _2002_, AT
__2:00 Pm__ (TIME), I _Timothy Dickerson_ ,
(BONDSMAN/AGENT FOR __Thompson__ SURETY)
SURRENDERED THE DEFENDANT TO THE __Houston Co. Jail__

JAIL.

_Timothy Dusk_

SIGNATURE OF BONDSMAN/SURETY

THIS PROCESS MUST BE RETURNED TO THE CLERK OF COURT WITHIN FIVE (5)
DAYS AFTER EXECUTED.

OPERATOR: AMC
PREPARED: 12/12/2002 C/O Jean Tanos

Subject Already in Jail per Judge Anderson
On this case

JID: LARRY K ANDERSON

## NOTICE TO BONDSMAN OR BONDSMAN'S DESIGNEE

(1) WHEN NOTIFIED BY THE CLERK OF COURT TO RETURN THIS PROCESS, YOU MUST RETURN IT WITHIN FIVE (5) DAYS OF RECEIVING IT.

(2) EXECUTION OF THIS PROCESS AFTER THE DEFENDANT HAS BEEN DISCHARGED IS AN ILLEGAL ARREST.

## NOTICE TO THE JAILER

UPON RECEIPT OF THE BONDSMAN'S PROCESS, YOU MUST RETURN THIS PROCESS TO THE CLERK OF COURT.

CHARGE: SEXUAL ABUSE 1ST                    BOND AMOUNT:      $10,000.00

## IDENTIFICATION OF ACCUSED PERSON

NAME OF ACCUSED PERSON: CAUDILL STANLEY        PHONE NUMBER:

SSN: 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  DOB: 11301958    AGE: 044    RACE: W SEX: M HT: 600

WT: 200  HR: BRO  EY: GRN  OTHER:

ADDR:                                    EMPLOYER/ADDR/PHONE:

## WITNESSES

Recommitted By _____ C/O Jean Jones _____

Date __ 12/12 _____ 20 02

OPERATOR: AMC
PREPARED: 12/12/2002

REPORT OF INVESTIGATION

Type of Investigation   Pre-Sentence                          Date Dictated   1/3/2003

Name   Caudill, Stanley Lee                     True name   Same

Alias   None

RSA   W/M/44            DOB   11/30/1958      Height and Weight   6'0"   189 lbs.

Complexion   Fair                Color of Hair   Brown      Color of Eyes   Green

Bodily Marks   None

Driver's License #   AL5535151              SS#   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

AIS#                FBI#                 SID#

Address   Houston County Jail            Phone #
          c/o 747 Pouncy Farm Road
          Daleville, AL 36322

County          Houston               Case #   CC2002-1141 & 1142

Offense(s)   Rape I/ Sex Abuse I

Sentence(s)

Date of Sentence                        Date Sentence Began

Date of Arrest   6-12-2002   Date of Bond              Bond Amount $   10,000

Judge   Larry K. Anderson           D.A.   Douglas Valeska

Attorney   Jack Blumenfeld               Retained          Appointed   X

Court Ordered Restitution $

Barred From Parole   Yes                   No      X

NOTES:

PRESENT OFFENSE(S)

County, Court, and Case Number

Houston County Circuit Court No. CC 2002-1141

**Offense:**

Rape I

**Sentence:**

**Date of Sentence:**

**Details of Offense:**

According to the Warrant Fact Sheet, dated 6-10-2002, obtained from the Dothan Police Department, on June 4, 2002 at approximately 6:00 p.m., Heather Michelle Austin reported to Dothan Police Officer D. Butler that she had been raped. According to Ms. Austin, the rape occurred approximately one year ago in Dothan, Alabama. Ms. Austin advised that Stanley Lee Caudill was the suspect. Austin was riding in a vehicle driven by Caudill when Caudill produced a handgun and threatened to kill Austin's family if she did not have sex with him.

Caudill arrived at the Holiday Inn, 2195 Ross Clark Circle, Dothan, Alabama, made Austin undress in the bathroom, and had sex with her. Caudill kept the handgun visible to Austin during sex. He rented Room 163 at the Holiday Inn on April 17, 2001.

On Saturday, June 8, 2002, Austin conducted a controlled phone call with Caudill. During the phone conversation, Caudill confirmed that he took Austin to the Holiday Inn. Austin was undressed and a firearm was in the motel room. The phone conversation was recorded.

Caudill was arrested by the Dothan Police Department on 6-12-2002, and charged with Rape I. The subject, Caudill, was convicted 12-9-2002 of the lesser offense, Sexual Abuse I.

**Serious Physical Injury Barring Parole:**

None.

**Subject's Statement:**

Subject did not make a statement.

**Case Status of Co-Defendants:**

None.

**Victim Notification Information:**

Heather Michelle Austin

Location of Offense:

This offense occurred within the city limits of Dothan, Alabama.

Court Ordered Restitution:

PRESENT OFFENSE(S)

County, Court, and Case Number

Houston County Circuit Court No. CC 2002-1142

Offense:

Sexual Abuse I

Sentence:

Date of Sentence:

Details of Offense:

According to the Warrant Fact Sheet obtained by Inv. Brian Harvin of the Dothan Police Department, on June 4, 2002 at approximately 6:00 p.m., Rachel Ann Taylor reported to Dothan Police Officer D. Butler that she had been raped. The rape occurred approximately one year ago in Dothan, Alabama. Taylor advised that Stanley Lee Caudill was the suspect. Taylor was riding in a vehicle driven by Caudill when Caudill produced a handgun and threatened to kill Taylor's family if she did not have sex with him.

Caudill arrived at the Holiday Inn, 2195 Ross Clark Circle, Dothan, Alabama, made Taylor undress in the bathroom, and used his hand to touch Taylor's vagina. Caudill kept the handgun visible to Taylor during this act. He rented Room 163 at the Holiday Inn on April 17, 2001.

On Saturday, June 8, 2002, a controlled phone call was conducted with Caudill. During the phone conversation, Caudill confirmed that he took Taylor to the Holiday Inn. Taylor was undressed and a firearm was in the motel room. The phone conversation was recorded.

Caudill was arrested on 6-12-2002, and charged with Sexual Abuse I.

Serious Physical Injury Barring Parole:

None.

Subject's Statement:

Subject did not make a statement.

3

None.                                                                                    33

**Victim Notification Information:**

Rachel Ann Taylor

**Victim Impact:**

**Location of Offense:**

This offense occurred within the city limits of Dothan, Alabama.

**Court Ordered Restitution:**

## RECORD OF ARREST(S)

**Prior Arrest Record:**

No prior arrest record found.

| ARREST DATE | COURT | OFFENSE | DISPOSITION DATE | DISPOSITION |
|---|---|---|---|---|

**Subsequent Arrest Record:**

No subsequent arrest record found.

## PERSONAL/SOCIAL HISTORY

**Subject:**

Stanley Lee Caudill is a white male, 44 years old, whose date of birth is 11-30-1958. Caudill is the eldest of four children born to Thomas and Virgie Rose Cole Caudill in Jackson, Kentucky. Subject stated that he was raised by his biological parents and grew up in Jackson, Kentucky. The subject stated that he resided in Ft. Wayne, Indiana in 1981, Topeka, Kansas in 1982, and moved to Ozark, Alabama in 1987. Subject stated that he resided in Ozark and Daleville, Alabama until his arrest. The subject stated that he has never been placed in an orphanage, foster home, boarding school or other institutions and that his relationship with his family is good.

**Marital Status History:**

The subject stated that he is divorced from Diane Cole Caudill, who resides in Ft. Wayne, Indiana and employed by the Civil Service as a computer program analyst. Caudill stated they were married on 4-23-1982 and divorced 7-2002 due to incompatibility. Subject stated that he had one son, Jason Scott Caudill born 11-14-1989. He resides with his biological mother, Diane Caudill, in Ft. Wayne, Indiana. The child is currently in the 8th grade.

4

**Health:**

Subject stated that he has a heart condition and has never been treated for any mental or emotional problems. Caudill denied any use of drugs or alcohol.

## Education:

Subject graduated from the 12th grade in 1978 from Breathitt High School, Jackson, Kentucky. Caudill further stated that he attended an Auto Technology course at Ivy Tech in Kansas City, Missouri for one year and completed the course.

## Financial Status:

The subject denied owning any property. He further stated that he owes $412.00 a month to a finance company for his truck payment and $350.00 a month for his house payment to his ex-wife. Subject stated that he is retired and has no other source of income. He was not employed at the time of his arrest.

## Employment History:

The subject worked as a truck driver for Church Transportation in Birmingham, Alabama in 2002 for approximately four months, earning 28 cents per mile.

He worked as a laborer for Innovations and Steve's Appliance in Daleville, Alabama in 2002 for approximately five months, earning $300.00 to $350.00 per week.

He was self-employed as an antique dealer in 1994 for approximately eight years.

Subject worked as a mechanic at Rahall Buick Mercedes in Daleville, Alabama in 1992 for approximately two years.

Due to his arrest, he lost his job at Church Transportation. He left Innovations and Steve's Appliance in Daleville for more money. Subject stated he retired from the antique dealer business. He left Rahall Buick Mercedes in 1992 because of injuries.

## Military Record:

The subject has never served in the armed forces, however, he has registered with the Selective Services.

## OFFENDER'S FAMILY:

## Father:

Thomas Caudill, age 65, resides in Williamsburg, Kentucky and is a retired mechanic. Subject stated he had no previous felony convictions.

## Mother:

Virgie Rose Cole Caudill deceased in 1997 at age 62 due to cancer.

Siblings:

Danny Caudill, age 42, resides in Mt. Carmel, Kentucky.

Thomas Caudill, II, age 40, resides in Enterprise, Alabama.

Alice C. Haney, age 38, resides in West Liberty, Kentucky.

Subject stated that none of his siblings had ever been convicted of a felony.

## EVALUATION OF OFFENDER

**Psychological Reports:**

There are no psychological reports available on the subject.

**Reputation and Community Activities:**

**Probation and Parole Officer's Remarks:**

Based on the nature of the offenses and the fact that a handgun was involved, a medium sentencing range would be recommended by this officer.

## PROBATION PLAN

**Home:**

Subject stated he plans to continue residing at 747 Pouncy Farm Road, Daleville, Alabama 36322.

**Employment:**

Subject plans to work for Church Transportation, Birmingham, Alabama.

**Signed and dated in Dothan, Alabama on January 6, 2003.**

Archie Z. Dansby
State Probation & Parole Officer

AZD/bj

6

12-10-02 *01 am*

*rec'd*

*CCO*

AS PUNISHMENT, DEFENDANT IS HEREBY FORMALLY SENTENCED:    36

( ) to hard labor for Houston County for a term of _____.

(X) to the penitentiary of the State of Alabama for a term of _10_ years. ( ) FHOA

On the 30th day after the Clerk transmits to the Department of Corrections a copy of this judgment entry and sentence, if the Department has not directed the Sheriff where the Defendant shall be taken for confinement, the Sheriff is hereby ordered to transport Defendant forthwith to the Department's receiving center at Kilby/Tutweiler (circle) and effectuate the transfer of the Defendant to the custody of the Department. In the event the Department refuses to accept the Defendant in compliance with state law, the Sheriff is ordered to secure the Defendant to the property at the  Department's receiving center.

Said sentence shall run (X) consecutive or ( ) concurrent with case number (s)

_____

( ) said sentence is suspended for _____ years on the condition of good behavior and payment of all fines, costs, and restitution.

(X) The Defendant is hereby given credit for the days spent incarcerated pending trial.

Defendant is also ordered to pay:

(X) A fine of $ _1000_°°
(X) A Victim Compensation Assessment of $ _500_°°
(X) All Court Costs.
( ) Restitution of $ _____ to _____.
( ) Drug Demand Reduction Act Assessment of $1,000.00.
( ) Alabama Forensics Sciences Trust Fund $100.00.

## ADDITIONAL SENTENCE PROVISION ORDERED ARE:

( ) Completion of a substance abuse program CRO
( ) The Department of Public Safety is ordered to comply with Alabama Code 13A-12-290 by suspending Defendant's drivers license for six months.
( ) Continued on same bond.
( ) Appeal bond is set at $_____.
( ) Indigency status granted and free transcript is ordered.

## PROBATION:

(X) Defendant applies for probation.
( ) Defendant waives application for probation.
( ) Probation hearing is set for the _____ day of _____ 20__ at _____
( ) Defendant to remain on same bond pending probation hearing

DONE this the _10th_ day of _Jan._ , 20_02_

1-10-2003  After hearing, probation is denied.  (See order on Probation Sheet)

01-10-03 cw/

_Larry K. Anderson, Judge_
CIRCUIT JUDGE

**AS PUNISHMENT, DEFENDANT IS HEREBY FORMALLY SENTENCED:**

( ) to hard labor for Houston County for a term of _____.

(X) to the penitentiary of the State of Alabama for a term of _10_ years. ( ) FHOA

On the 30th day after the Clerk transmits to the Department of Corrections a copy of this judgment entry and sentence, if the Department has not directed the Sheriff where the Defendant shall be taken for confinement, the Sheriff is hereby ordered to transport Defendant forthwith to the Department's receiving center at Kilby/Tutweiler (circle) and effectuate the transfer of the Defendant to the custody of the Department. In the event the Department refuses to accept the Defendant in compliance with state law, the Sheriff is ordered to secure the Defendant to the property at the Department's receiving center.

Said sentence shall run (X) consecutive or ( ) concurrent with case number (s)

_____

( ) said sentence is suspended for _____ years on the condition of good behavior and payment of all fines, costs, and restitution.

(X) The Defendant is hereby given credit for the days spent incarcerated pending trial.

Defendant is also ordered to pay:

(X) A fine of $ _1000.00_
(X) A Victim Compensation Assessment of $ _500.00_.
(X) All Court Costs.
( ) Restitution of $ _____ to _____.
( ) Drug Demand Reduction Act Assessment of $1,000.00.
( ) Alabama Forensics Sciences Trust Fund $100.00.

## ADDITIONAL SENTENCE PROVISION ORDERED ARE:

( ) Completion of a substance abuse program CRO :
( ) The Department of Public Safety is ordered to comply with Alabama Code 13A-12-290 by suspending Defendant's drivers license for six months.
( ) Continued on same bond.
( ) Appeal bond is set at $ _____.
( ) Indigency status granted and free transcript is ordered.

## PROBATION:

( ) Defendant applies for probation.
(X) Defendant waives application for probation.
( ) Probation hearing is set for the _____ day of _____ 20__ at _____
( ) Defendant to remain on same bond pending probation hearing

DONE this the _10th_ day of _Jan_ ,20_03_.

01-10-03 CRC

_Larry K. Anderson, Judge_
CIRCUIT JUDGE

## IN THE CIRCUIT COURT OF HOUSTON COUNTY

STATE OF ALABAMA,                    )
VS.                                  )     CC-02-1141
STANLEY LEE CAUDILL,                 )     CC-02-1142
    DEFENDANT                    )

### NOTICE OF APPEAL AND MOTION FOR APPELLATE BOND

1. The Defendant, by and through his undersigned attorney, hereby files notice of appeal of his conviction.

2. The Defendant requests that this Honorable Court set a reasonable appeal bond in this case.

3. The undersigned would further move to withdraw as attorney for the Defendant.

**FILED**

JAN 1 3 2003

JUDY BYRD, CLERK
HOUSTON CO., AL

Jack A. Blumenfeld (BLU003)
Attorney for Defendant
P.O. Box 6264
Dothan, AL  36302

### CERTIFICATE OF SERVICE

    I have on this 10th day of January, 2003, personally delivered a copy of this pleading to the office of the District Attorney of Houston County, Alabama.

Jack A. Blumenfeld

1-17-03   Atty Blumenfeld allowed to withdraw. Shaun McGee
is appointed to represent Defendant on appeal. No appeal
bond. Free transcript ordered.
1/21-02 N: JS  DA  CR, Dpt SMcG     Anderson, Judge

NOTICE OF APPEAL TO THE ALABAMA COURT OF CRIMINAL APPEALS
BY THE TRIAL COURT CLERK
IN THE CIRCUIT COURT OF   HOUSTON COUNTY
STATE OF ALABAMA VS CAUDILL STANLEY LEE      JUDGE: LARRY K ANDERSON

```
| APPEAL DATE: 01/13/2003                                                      |
|-----------------------------------------------------------------------------|
| INDIGENCY STATUS:                                                           |
|   GRANTED INDIGENCY STATUS AT TRIAL COURT:       --X-- YES  ----- NO        |
|   APP. TRIAL COUNSEL PERMITTED TO W/D ON APPEAL: --X-- YES  ----- NO        |
|   INDIGENT STATUS REVOKED ON APPEAL:             ----- YES  --X-- NO        |
|   INDIGENT STATUS GRANTED ON APPEAL:             --X-- YES  ----- NO        |
|                                                                             |
| DEATH PENALTY: NO                                                          |
|                                                                             |
| APPEAL TYPE: STATE CONVICTION   Shaun McGhee appointed as Counsel on Appeal|
|-----------------------------------------------------------------------------|
| THIS IS AN APPEAL FROM A CONVICTION.                                        |
|                                                                             |
| DATE OF CONVICTION: 12/09/2002        DATE OF SENTENCE: 01/10/2003          |
|                                                                             |
| YOUTHFUL OFFENDER STATUS: DENIED                                           |
|                                                                             |
| CO/CASE NUMBER: 38/CC 2002 001141.00                                       |
| CODE: RAP1   CONVICTION: RAPE 1ST DEGREE    ACTION: CONVICTED              |
|                                             STATUTE: 13A-006-061           |
| SENTENCE:   CONF: 10 YRS 00 MOS 000 DAYS                                   |
| SENTENCE:   PROB: 00 YRS 00 MOS 000 DAYS     LIFE: NO  LIFEWO: NO          |
|-----------------------------------------------------------------------------|
```

POST-JUDGMENT MOTIONS FILED:    DT FILED      DT DENIED    CON BY AGREE

| | DT FILED | DT DENIED | CON BY AGREE |
|---|---|---|---|
| --- MOTION FOR NEW TRIAL | -------- | --------- | ------------ |
| --- MOTION FOR JUDG. OF ACQUIT | -------- | --------- | ------------ |
| --- MOTION TO W/D GUILTY PLEA | -------- | --------- | ------------ |
| --- MOTION FOR ATTY TO W/DRAW | -------- | --------- | ------------ |
| --- OTHER _____ | -------- | --------- | ------------ |

```
| COURT REPORTER(S):               MOEGLIN, WILLIAM R.                       |
| ADDRESS:                         C/O HON.LARRY K. ANDERSON                 |
|                                  DOTHAN       ,  AL  36302                 |
|                                                                           |
| APPELLATE COUNSEL #1:            MCGHEE BILLY SHAUN                        |
| ADDRESS:                         188 N FOSTER ST                           |
|                                  SUITE 101                                 |
|                                  DOTHAN       ,  AL  36303                 |
| PHONE NUMBER:                    334-702-1744                              |
|                                                                           |
| APPELLATE COUNSEL #2:            ------------------------------           |
| ADDRESS:                         ------------------------------           |
|                                  ------------------------------           |
|                                  ------------------------------           |
| PHONE NUMBER:                    ------------------------------           |
|                                                                           |
| APPELLANT (PRO SE):              CAUDILL STANLEY LEE                       |
| ADDRESS:                         C/O HOUSTON COUNTY JAIL                   |
|                                  DOTHAN       ,  AL  363010000             |
| AIS #:                                                                     |
|                                                                           |
| APPELLEE (IF CITY APPEAL):       ------------------------------           |
| ADDRESS:                         ------------------------------           |
|                                  ------------------------------           |
```

I CERTIFY THAT THE INFORMATION PROVIDED                    OPERATOR: STW
ABOVE IS ACCURATE TO THE BEST OF MY              PREPARED: 01/21/2003
KNOWLEDGE AND I HAVE SERVED A COPY OF
THIS NOTICE OF APPEAL ON ALL PARTIES TO
THIS ACTION ON THIS _21st_DAY OF _January_, 2003      CIRCUIT COURT CLERK

ALABAMA JUDICIAL DATA CENTER
NOTICE OF APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS
BY THE TRIAL COURT CLERK
IN THE CIRCUIT COURT   OF   HOUSTON COUNTY
STATE OF ALABAMA VS CAUDILL STANLEY        JUDGE: LARRY K ANDERSON

```
-------------------------------------------------------------------
| APPEAL DATE: 01/13/2003                                          |
|-----------------------------------------------------------------|
| INDIGENCY STATUS: -                                             |
|   GRANTED INDIGENCY STATUS AT TRIAL COURT:    __X__ YES _____ NO|
|   APP. TRIAL COUNSEL PERMITTED TO W/D ON APPEAL: __X__ YES _____ NO|
|   INDIGENT STATUS REVOKED ON APPEAL:          _____ YES __X__ NO|
|   INDIGENT STATUS GRANTED ON APPEAL:          __X__ YES _____ NO|
|                                                                 |
| DEATH PENALTY: NO                                               |
|                                                                 |
| APPEAL TYPE: STATE CONVICTION    Shaun McGhee is appointed as Counsel on Appeal|
|-----------------------------------------------------------------|
| THIS IS AN APPEAL FROM A CONVICTION.                            |
|                                                                 |
| DATE OF CONVICTION: 12/09/2002      DATE OF SENTENCE: 01/10/2003|
|                                                                 |
| YOUTHFUL OFFENDER STATUS: DENIED                                |
|                                                                 |
| CO/CASE NUMBER: 38/CC 2002 001142.00                            |
| CODE: SXA1   CONVICTION: SEXUAL ABUSE 1ST   ACTION: CONVICTED   |
|                                             STATUTE: 13A-006-066|
| SENTENCE:   CONF: 10 YRS 00 MOS 000 DAYS                        |
| SENTENCE:   PROB: 00 YRS 00 MOS 000 DAYS     LIFE: NO  LIFEWO: NO|
|-----------------------------------------------------------------|
| POST-JUDGMENT MOTIONS FILED:   DT FILED   DT DENIED   CON BY AGREE|
| ___ MOTION FOR NEW TRIAL      _____   _____   _____|
| ___ MOTION FOR JUDG. OF ACQUIT _____   _____   _____|
| ___ MOTION TO W/D GUILTY PLEA  _____   _____   _____|
| ___ MOTION FOR ATTY TO W/DRAW  _____   _____   _____|
| ___ OTHER _____  _____   _____   _____|
|-----------------------------------------------------------------|
| COURT REPORTER(S):            MOEGLIN, WILLIAM R.               |
| ADDRESS:                      C/O HON.LARRY K. ANDERSON         |
|                               DOTHAN        ,  AL   36302       |
|                                                                 |
| APPELLATE COUNSEL #1:         MCGHEE BILLY SHAUN                |
| ADDRESS:                      188 N FOSTER ST                   |
|                               SUITE 101                         |
|                               DOTHAN        ,  AL   36303       |
| PHONE NUMBER:                 334-702-1744                      |
|                                                                 |
| APPELLATE COUNSEL #2:         _____  |
| ADDRESS:                      _____  |
|                               _____  |
| PHONE NUMBER:                 _____  |
|                                                                 |
| APPELLANT (PRO SE):           CAUDILL STANLEY                   |
| ADDRESS:                      C/O HOUSTON COUNTY JAIL           |
|                               DOTHAN        ,  AL   363010000   |
| AIS #:                                                          |
|                                                                 |
| APPELLEE (IF CITY APPEAL):    _____  |
| ADDRESS:                      _____  |
|                               _____  |
|-----------------------------------------------------------------|
```

I CERTIFY THAT THE INFORMATION PROVIDED                 OPERATOR: STW
ABOVE IS ACCURATE TO THE BEST OF MY              PREPARED: 01/21/2003
KNOWLEDGE AND I HAVE SERVED A COPY OF
THIS NOTICE OF APPEAL ON ALL PARTIES TO
THIS ACTION ON THIS 21st DAY OF _January_, 2003        CIRCUIT COURT CLERK

Criminal Appeal No._____

# COURT OF CRIMINAL APPEALS
## DOCKETING STATEMENT

A. GENERAL INFORMATION
   __XX__ Circuit Court        _____ District Court        _____ Juvenile Court of
   **HOUSTON** County.

   STANLEY LEE CAUDILL
              APPELLANT

   v.

   STATE OF ALABAMA
              APPELLEE

   Case Number: CC-02-1141

   Date of Complaint/Indictment:

   Date of Judgment/Sentence/Order: 01/10/03

   Indigent Status Requested: Yes   Granted: Yes

**FILED**
JAN 2 3 2003
Judy Byrd
JUDY BYRD, CLERK
HOUSTON CO., AL

B. REPRESENTATION

   Attorney appointed or retained?  Appointed

   If no attorney, will appellant represent self?

   **Appellant's Attorney:**
   **Shaun McGhee**
   **The Law Offices of Thomas S. Smith**
   **188 N. Foster St., Suite 101**
   **Dothan, AL 36303**

   **Telephone:**
   (334) 702-1744

   **FAX:**
   794-4065

## C. CODEFENDANTS

Codefendant-           Case No.-

Codefendant            Case No.

Codefendant            Case No.

## D. TYPE OF APPEAL

1. XX__ State conviction
2. _____ Post-conviction remedy
3. _____ Probation revocation
4. _____ Pretrial Order
5. _____ Contempt Adjudication

6. _____ Municipal Conviction
7. _____ Juvenile Transfer Order
8. _____ Juvenile Delinquency
9. _____ Habeas Corpus Petition
10. _____ Other

## E. UNDERLYING CONVICTION/CHARGE with ' ' citation

1. _____ Capital
2. _____ Homicide
3. _____ Assault
4. _____ Kidnaping
5 _____ Drug Possession
6. _____ Trafficking in Drugs
7._____ Theft
8. _____ Damage, etc. to property

9. _____ Escape
10. _____ Weapon/firearm
11. _____ Fraudulent practices
12. _____ Offenses re: family
13. _____ Traffic - DUI
14. _____ Traffic - other
15. __XX_ Other

## F. DEATH PENALTY imposed?  No

## G. TRANSCRIPT

1. Will record on appeal have a reporter's transcript?  Yes

2. If yes, state date the Reporter's Transcript Order was filed. 01/23/03

3. If no, will a stipulation of facts be filed with the Circuit Clerk?

4. If no, will the parties involved stipulate that only questions of law are involved and will the trial court certify the questions of law?

## H.  POST JUDGMENT MOTIONS

| Date of Filing | Type | Date of Ruling |
|---|---|---|
| 01/13/03 | Notice of Appeal | |

## I.  NATURE OF CASE (without argument, summarize the facts of the case)

Defendant convicted of Sexual Abuse 1st after jury trial.

## J.  ISSUE(S) ON APPEAL (briefly state the anticipated issues that will be presented on appeal)

1. State failed to prove beyond a reasonable doubt in the case.

2. Insufficient evidence to support the charge.

3. Other issues to be determined upon review of transcript

## K.  SIGNATURE

_Shaun McGhee_                                    _1/22/03_
Shaun McGhee                                        Date

FILED

JAN 2 3 2003

JUDY BYRD, CLERK
HOUSTON CO., AL

Criminal Appeal No._____

# REPORTER'S TRANSCRIPT ORDER -- CRIMINAL

TO BE COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF
NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF APPEAL OR FILED
WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.

<u>XX</u> CIRCUIT COURT __DISTRICT COURT __JUVENILE COURT OF **HOUSTON**
COUNTY

**STANLEY LEE CAUDILL**
  Appellant,

v.

**STATE OF ALABAMA**
  Appellee.



Case Number: CC-02-1141

Date of Judgment/Sentence/Order: 01/10/03

Date of Notice of Appeal:
Oral:   Written: 01/13/03
Indigent Status Granted: Yes

**PART 1. TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT
REPORTER'S TRANSCRIPT:**

  I certify that no reporter's transcript is expected and that the record on appeal shall consist
of the clerk's record only. If the appeal is from District Court or Juvenile Court, I also
certify (1) that a stipulation of facts will be included in the clerk's record and that the
appellant waives his right to a jury trial if so entitled; or (2) that the parties have
stipulated that only questions of law are involved and that the questions will be certified
by the Juvenile/District Court for inclusion in the clerk's record (See Rule 28(A)(1),
Alabama Rules of Juvenile Procedure, and ' 12-12-72, *Code of Alabama*, 1975).

_____  _____
Signature             Date
Shaun McGhee

4 b

**PART 2. DESIGNATION OF PROCEEDING TO BE TRANSCRIBED.** Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case.

MARK PROCEEDINGS REQUESTED

COURT REPORTER(S)
William R. Moeglin
P. O. Box 6406
Dothan, AL 36302

A. XX TRIAL PROCEEDINGS

B. XX ORGANIZATION OF THE JURY          Same

C. XX ARGUMENTS OF COUNSEL          Same

IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL.

ADDITIONAL PROCEEDINGS REQUESTED          DATE          COURT REPORTERS

D. All Pre-Trial Hearings          _____          William R. Moeglin

**IMPORTANT NOTICE:** The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective. Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not specifically designated on this form for inclusion in the reporter's transcript. A general designation such as all proceedings is not sufficient. (See Rule 10(c)(2)), A.R.App.P.)

**PART 3. MUST BE SIGNED IF THE APPEAL WILL HAVE A COURT REPORTER'S TRANSCRIPT:**

I certify that I have distributed this form as set out below. I also certify (1) that I have made satisfactory financial arrangements with each court reporter listed above for preparing his or her portion of the reporter's transcript herein requested; or (2) that the appellant proceeded at trial as an indigent and that status has not been revoked; or, (3) that the appellant has been given permission to proceed on appeal in forma pauperis.

Signature
B. Shaun McGhee

1/22/03
Date

**FILED**

JAN 2 3 2003

JUDY BYRD, CLERK
HOUSTON CO., AL

**DISTRIBUTION:** Original filed with Clerk of Trial Court and copies mailed to: (1) Clerk of the Court of Criminal Appeals, (2) the District Attorney, (3) the Attorney General or the municipal prosecutor in lieu of the District Attorney and the Attorney General if the appeal is from a municipal conviction, and (4) to each Court Reporter who reported proceedings designated for inclusion in the reporter's transcript.

REQUEST FOR LOCAL EXTENSION OF TIME
TO COMPLETE THE REPORTER'S TRANSCRIPT

Stanley Lee Caudill                    v. State of Alabama
Appellant's Name                          Appellee

Trial Court Case No. CC02-1141, 1142 Notice of Appeal Date 1-13-03

On appeal from the: [XX] Circuit Court of
                     [  ] District Court of  Houston _____ County
                     [  ] Juvenile Court of

I, William R. Moeglin _____, a court reporter in the above referenced case,
hereby request a 28 day extension to complete the transcript in said cause for the reasons
I have set out below. Currently this transcript is due on 3-10-03 _____, and with this extension
the transcript will be due on 4-14-03 .

REASONS: This appeal is next in line for dictation as I take them in
the order in which they were appealed. Hopefully no further extensions
will be needed.

_William R. Moeglin_____              March 10, 2003
Court Reporter                          Date

=======================================================================
TRIAL COURT ACTION

[X] Upon consideration of the above request, I hereby grant a 28 day extension to complete said transcript, thus extending
the transcript's due date to 4-14-03 . Upon granting this request, I direct the court reporter to file this order
with the Clerk of this Court and to mail or fax a copy hereof to the Clerk of the Court of Criminal Appeals at the address
noted below by no later than the transcript due date in effect immediately preceding this order.

[ ] The above referenced request for a local extension is denied.

_Tammy K. Anderson_____              March 10, 2003
Judge's Signature                       Date

Note:    Pursuant to Rule 11(c) of the Alabama Rules of Appellate Procedure, local extensions cannot total more than 28
days and cannot be to a date more than 84 days from the date of the notice of appeal.

FILED
MAR 1 0 2003
Judy Byrd
JUDY BYRD, CLERK
HOUSTON CO., AL

=======================================================================
The Clerk of the Court of Criminal Appeals    Fax (334) 242-4689
P. O. Box 301555
Montgomery, Alabama 36130-1555

COURT OF CRIMINAL APPEALS
JUDICIAL BUILDING, 300 DEXTER AVENUE
P.O. BOX 301555
MONTGOMERY, AL 36130-1555

March 10th, 2003

H. W. "Bucky" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

*Lane W. Mann*
Clerk
*Wanda K. Ivey*
Assistant Clerk
(334) 242-4590
FAX (334) 242-4689

RE: CR-02-0755

Stanley Lee Caudill v. State of Alabama (Appeal from Houston Circuit Court: CC02-1141; 02-1142).

        You are hereby notified that the Court of Criminal Appeals acknowledges that the following action was taken in the above cause by the trial court:

        Additional time is granted to certify the completion of reporter's transcript to and including 04/07/2003.

                                                Lane W. Mann, Clerk
                                                Court of Criminal Appeals

LWM/sm

cc: Honorable Larry K. Anderson, Circuit Judge
    Honorable Judy Byrd, Circuit Clerk
    William Moeglin, Court Reporter
    Honorable Billy Shaun McGhee, Attorney, Appellant

FILED

MAR 13 2003

*Judy Byrd*

JUDY BYRD, CLERK
HOUSTON CO., AL

Case 1:05-cv-00785-MEF-WC    Document 8-2    Filed 09/27/2005    Page 52 of 128

# MOTION TO COURT OF CRIMINAL APPEALS FOR EXTENSION OF TIME TO FILE TRANSCRIPT

**TO:** **The Clerk of the Court of Criminal Appeals**          **Fax: (334) 242-4689**
P. O. Box 301555
Montgomery, Alabama 36130-1555

**Criminal Appeals Case Number**          CR _02_ - _0755_

Stanley Lee Caudill                    **v.** State of Alabama
**Appellant's Name**                         **Appellee**

**Trial Court Case No.** CC02-1141,1142    **Notice of Appeal Date** 1-13-03

On appeal from the: [XX] Circuit Court of

[  ] District Court of      Houston      County

[  ] Juvenile Court of

I, _William R. Moeglin_, a court reporter in the above referenced case, hereby request a __28__ day extension to complete the transcript in said cause for the reasons I have set out below. Currently this transcript is due on 4-7-03, and with this extension the transcript will be due on 5-5-03.

REASONS: This appeal is currently being dictated and no further extensions are anticipated. One of my typist's computers died and had to be replaced which caused some unavoidable delays in my transcript production.

_William R. Moeglin_
Court Reporter

April 7, 2003
Date

**Note:** Rule 11(c) of the Alabama Rules of Appellate Procedure prohibits an appellate court from granting an extension if the request is not received by the clerk of the appellate court within the time originally prescribed or before the expiration of an extension previously granted. Based on internal policy of the Court of Criminal Appeals, no more than two 28-day extensions will be granted.

COURT OF CRIMINAL APPEALS
JUDICIAL BUILDING, 300 DEXTER AVENUE
P.O. BOX 301555
MONTGOMERY, AL 36130-1555

*H. W. "Bucky" McMILLAN*
Presiding Judge
*SUE BELL COBB*
*PAMELA W. BASCHAB*
*GREG SHAW*
*A. KELLI WISE*
Judges

*Lane W. Mann*
Clerk
*Wanda K. Ivey*
Assistant Clerk
(334) 242-4590
FAX (334) 242-4689

April 7th, 2003

RE: CR-02-0755

Stanley Lee Caudill v. State of Alabama (Appeal from Houston Circuit Court: CC02-1141;
02-1142).

You are hereby notified that the following action was taken in the above cause by
the Court of Criminal Appeals:

Additional time is granted to certify the completion of reporter's transcript to
and including 04/14/2003.

Lane W. Mann, Clerk
Court of Criminal Appeals

LWM/sm

cc: Honorable Larry K. Anderson, Circuit Judge
Honorable Judy Byrd, Circuit Clerk
William Moeglin, Court Reporter
Honorable Billy Shaun McGhee, Attorney, Appellant



| 4-17-2003-- | Due to workload, the Circuit Clerk's Office is granted an additional |
| | 7 days on filing transcript with Court of Criminal Appeals. |
| | 4-21-03                    _Terry K. Anderson, Judge_ |
| | N· CCA. A6  SMᵍ |

COURT OF CRIMINAL APPEALS
JUDICIAL BUILDING, 300 DEXTER AVE...UE
P.O. BOX 301555
MONTGOMERY, AL 36130-1555

H. W. "Bucky" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
FAX (334) 242-4689

April 17th, 2003

RE: CR-02-0755

Stanley Lee Caudill v. State of Alabama (Appeal from Houston Circuit Court: CC02-1141; 02-1142).


        You are hereby notified that the Court of Criminal Appeals acknowledges that the following action was taken in the above cause by the trial court:

        Additional time is granted to file the record on appeal to and including 04/29/2003.

LWM/sm

                                        Lane W. Mann, Clerk
                                        Court of Criminal Appeals


cc: Honorable Judy Byrd, Circuit Clerk



IN THE CIRCUIT COURT OF _Houston_ COUNTY

_Dothan_ ALABAMA — COUNTY SEAT

APPELLANT: _Stanley Lee Caudill_

VS.                                                                      appellant

STATE OF ALABAMA - or -

                                                                         appellee

| ACTION (Case) |
| No. _CC_ |
| [X] State Criminal |
| [ ] Civil (Law) |
| [ ] City Appeal (Crim.) |
| [ ] Civil (Equity) |

TO:   (name) _Judy Byrd_   Clerk [ ] Reg. of CIRCUIT COURT OF _Houston_ COUNTY.

FROM: (name) WILLIAM R. MOEGLIN _____ COURT REPORTER OF 20TH JUDICIAL CIRCUIT OF ALABAMA

REPORTER'S INDEX TO EXHIBITS

The following EXHIBITS were received by the Court Reporter in above Action and same have been properly marked and identified. Where capable said exhibit(s) have been assembled herein (in flat file); where incapable of being assembled herein such exhibit(s) placed in suitable separate container. This index includes all exhibits (herein assembled or separately housed - or - other, as indicated) and further indicates those offered, admitted or not admitted into evidence, etc...:-                                           . [NOTE: (√) check appropriate]

| Parts | Exhibit No. | BRIEF DESCRIPTION OF EXHIBIT | (√) Admitted Yes | (√) Admitted No | Iden. Only (√) | With-drawn (√) | Released By Court To Party (√) | Original Retained By Court (√) | In File (√) | In Con-tainer (√) | REMARKS, etc. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | 1 | Micro Cassette | √ | | | | | | | | |
|   | 2 | Transcript | √ | | | | | | | | |
|   | 3 | Transcript | √ | | | | | | | | |
|   | 4 | Waiver Form | √ | | | | | | | | |
|   | 5 | Micro Cassette | √ | | | | | | | | |

NOTE: ARAP RULE 11(e)... Reporter shall file all exhibits with trial Court Clerk within 14 days (2 weeks) of date of the Notice of Appeal in Criminal and Civil Actions, assembled in a flat file (not shuck) and if incapable then assembled in a suitable container... with index.

| 1) ABOVE INDEX RECEIVED & FILED _April 14, 2003_ | DATED THIS _14_ DAY OF _April_ 2003 |
| 2) EXHIBITS IN FILE &/OR CONTAINER VERIFIED (except as noted) | /s/ _William R. Moeglin_ |
| /s/ _Judy Byrd_ | COURT REPORTER |
| CLERK - REGISTER - or - AUTHORIZED ASST. | 20TH JUDICIAL CIRCUIT |
| CLERK'S OFC. [ ] — REGISTER'S OFC. [ ] | |

STATE'S EXHIBIT NUMBER 1

CERTIFICATION OF EVIDENCE


I, Judy Byrd, Clerk of the Circuit Court of Houston County, Alabama do hereby certify that State's Exhibit Number 1 is of such size and bulk ( Micro Cassette ) that it is incapable of being included in the transcript, but will be forwarded to Court of Criminal Appeals if requested by the Court.

Judy Byrd, Clerk

STATE'S EXHIBIT NUMBER 2

Date:   3/02/02
Time:   14:29:17                          Offense Report                    Program: CMS80...

                                                                              (Continued)
   a No. . . . : 1-02-004691
      FOLLOWING IS A RECORDED TELEPHONE CONVERSATION BETWEEN VICTIM,
      HEATHER MICHELLE AUSTIN, AND SUSPECT, STANLEY CAUDILL.  TAPED
      06-08-02 APPRX 1115 HOURS.

   SC:  HELLO
   HA:  HEY

   SC:  HEY
   HA:  WHAT ARE YOU DOING?

   SC:  UH . . JUST MESSING AROUND THE HOUSE.  (CHUCKLING)
   HA:  OH . .

   SC:  WHAT YOU UP TO?
   HA:  NOTHING.

   SC:  DOING ALRIGHT?
   HA:  YEAH

   SC:  HOW'S THE REST OF THE FAMILY DOING?
   HA:  THEY'RE DOING FINE.

   SC:  SURPRISED TO HEAR YOU ON THE PHONE.
   HA:  OH, YEAH

   SC:  (CHUCKLING)  (COUGHING)  WHERE YOU AT HOME?
   HA:  YEAH

   SC:  ARE YOU?
   HA:  UUM, HUMM

   SC:  YOU OFF TODAY?
   HA:  YEAH

   SC:  GEE, HOW DID YOU GET A SATURDAY OFF?
   HA:  MY BOSS MAN . . MY BOSS LADY LET ME OFF ON SATURDAY, SUNDAY AND
        MONDAY.

   SC:  OH, REALLY.
   HA:  YEAH

   SC:  WELL GEE, YOU GOT THE BEST PART OF THE WEEK OFF.
   HA:  UH, HUH

   SC:  UH . . I BEEN MESSING AROUND THE HOUSE A LITTLE BIT.  I WAS WITH
        NICKEY UNTIL ABOUT THREE THIRTY THIS MORNING.
   HA:  OH, YOU WERE.

   SC:  YEAH (CHUCKLING)  UH . . WE HAD A PRETTY GOOD TIME.
   HA:  UUMM . . WELL I JUST CALLED BECAUSE I NEEDED TO TALK TO YOU FOR
        A MINUTE ABOUT SOMETHING.

No. . . . . : 1-02-004691

SC:  O.K.
HA:  UH . . .

SC:  WHAT'S IT ABOUT?
HA:  ABOUT . . UUMM . . WHAT HAPPENED A YEAR AGO.

SC:  O.K.  WHERE YOU . . WHERE AT?
HA:  THAT NIGHT YOU TOOK US TO THAT MOTEL.

SC:  YEAH, I KNOW . . I MEAN WHERE DO YOU WANT TO MEET AT?
HA:  OH, I JUST WANT TO TALK TO YOU ON THE PHONE ABOUT IT.

SC:  OH, OKAY.
HA:  AND THERE AIN'T NOBODY IN HERE SO . .

SC:  O.K.
HA:  ME AND STACY IS HAVING PROBLEMS ABOUT THIS.

SC:  YEAH
HA:  AND I THINK I SHOULD TELL HIM ABOUT WHAT HAPPENED THAT NIGHT.

SC:  WELL . . IF YOU NEED TO.  YOU KNOW IT'S GONNA CAUSE A LOT OF
     PROBLEMS BETWEEN EVERYBODY.
HA:  YEAH, I KNOW.  BUT I DON'T WANT TO HIDE NOTHING FROM HIM SO . .

SC:  YEAH .. WELL NOTHING ACTUALLY HAPPENED SO I DON'T KNOW.
HA:  REMEMBER THAT . . THAT NIGHT WHEN YOU TOOK US TO BONIFAY . . .

SC:  YEAH
HA:  WHAT DID YOU SHOW US THAT GUN FOR?

SC:  ALL I DID, I JUST DIDN'T WANT TO LEAVE . . I DIDN'T WANT TO
     LEAVE NOTHING IN THE TRUCK.  IT WASN'T LOADED OR ANYTHING.
HA:  OH . . .

SC:  I KNOW YOU'RE RECORDING THIS.
HA:  HUH?

SC:  I KNOW YOU'RE RECORDING THIS.
HA:  RECORDING WHAT?

SC:  THE PHONE CONVERSATION.
HA:  NO, I'M NOT RECORDING NOTHING.  I'M JUST TALKING TO YOU ON THE
     PHONE.  I DON'T (UNINTELLIGBLE) EVERYBODY ELSE IS GONE.

SC:  YEAH
HA:  I MEAN I WAS JUST WANTING TO TELL STACY ABOUT IT THAT'S WHY I
     CALLING AND ASKING YOU.

SC:  YEAH.  YOU CAN, YOU KNOW, LIKE I SAID NOTHING REALLY HAPPENED.
     YOU KNOW.  WE DIDN'T DO ANYTHING REALLY, BUT . . .
HA:  DIDN'T DO ANYTHING?

                                                                    (Continued)

No. . . . : 1-02-004691

SC:   NO, NOT REALLY.  UH . . I'M HAVING . . I GOT A BUNCH OF OTHER
      PROBLEMS GOING ON AND I . . AND NOW THEY'RE SAYING THAT
      FORTY FIVE THOUSAND IS MISSING FROM WORK AND EVERYTHING.
HA:   YEAH

SC:   AND THEN DIANNE TOOK OFF WITH JASON.  I'M TRYING TO FIND THEM.
HA:   WELL THAT NIGHT IN THE MOTEL YOU HAD SEX WITH ME BUT NOT RACHEL.

SC:   I DIDN'T HAVE SEX WITH YOU.
HA:   YEAH, YOU DID.

SC:   NO I DIDN'T.  COULDN'T DO ANYTHING REMEMBER.
HA:   YEAH, YOU DID.

SC:   THAT'S WHY I SAID NOTHING REALLY HAPPENED.  WE DIDN'T HAVE SEX
      THAT NIGHT.  I SAID NOTHING REALLY HAPPENED BECAUSE WE DIDN'T
      HAVE SEX OR ANYTHING.
HA:   WHY DID YOU TAKE US TO THE ROOM THEN?

SC:   I DON'T KNOW.  LIKE I SAID WE DIDN'T HAVE SEX THAT NIGHT OR
      ANYTHING.  I COULDN'T.  NOTHING REALLY ACTUALLY HAPPENED.
HA:   YOU KNOW THAT REALLY HURT ME THAT NIGHT WHAT YOU DONE CAUSE I
      THOUGHT YOU WERE MY FRIEND.

SC:   YEAH, WELL I HAD OTHER PROBLEMS AT THE TIME WITH SOMEONE ELSE
      IN MONTGOMERY AND IF YOU WANT I'LL GIVE HIM YOUR . . UH . . GIVE
      YOU THIS NUMBER.  YOU THINK I WAS JOKING ABOUT THAT PERSON.  NO
      I WASN'T.
HA:   UUMM . .

SC:   WE'VE ALL KIND OF DONE THINGS AT THAT TIME WE DIDN'T WANT TO DO.
HA:   YEAH

SC:   IF YOU'D LIKE I CAN GIVE HIM A CALL AND LET HIM GET UP WITH YOU.
HA:   RACHEL IS GONNA HAVE PROBLEMS WITH THAT . . THAT NIGHT WHAT
      HAPPENED.

SC:   NOTHING ACTUALLY HAPPENED SO . . . WE WASN'T THERE BUT FIFTEEN
      MINUTES.
HA:   WELL WHY DID YOU TAKE YOUR CLOTHES OFF THAT NIGHT THEN IF
      NOTHING HAPPENED?

SC:   NOTHING HAPPENED.  I TAKE MY CLOTHES OFF HERE AT THE HOUSE AND
      RUN AROUND, YOU KNOW, I WALK AROUND HERE YOU KNOW WITH NO CLOTHES
      ON.  GET OUT OF THE SHOWER AND DRY OFF.
HA:   YEAH

SC:   I'M NAKED AROUND HERE CAUSE THAT'S THE WAY I IS.
HA:   YEAH

SC:   YOU CAN TELL HIM IF YOU WANT OR IF YOU NEED TO OR WHATEVER.

Date: 8/02/02
Time: 14:29:17

Offense Report

Program: CMS30LL

No. . . . : 1-02-004691

NOTHING HAPPENED.

HA: BUT YOU KNOW YOU PUT IT IN ME.

SC: I DIDN'T. SURE DIDN'T. IT NEVER GOT HARD ENOUGH OR ANYTHING ELSE YOU KNOW. I DIDN'T DO ANYTHING THAT'S WHY I SAY WE WAS ONLY THERE ABOUT FIFTEEN MINUTES. NOTHING ACTUALLY . . YOU KNOW NOTHING HAPPENED.

HA: BUT I FELT SOMETHING THAT NIGHT WHEN IT HAPPENED.

SC: I DON'T KNOW WHAT YOU FELT, BUT IT WASN'T ME. CAUSE I COULDN'T DO ANYTHING IF I WANTED TO.

HA: YOU KNOW THAT NIGHT WHEN ME AND RACHEL WAS CRYING AND STUFF, YOU KNOW WE DIDN'T WANT TO BE . . REALLY WANT TO BE THERE, RIGHT?

SC: UUM, HUMM. (UNINTELLIGIBLE) LIKE I SAY, I'LL GIVE YOU A NUMBER IF YOU WANT.

HA: I DON'T KNOW YET ABOUT THAT NUMBER.

SC: LIKE I SAY TELL HIM IF YOU NEED TO, BUT LIKE I SAID NOTHING ACTUALLY HAPPENED. IT'S GONNA CAUSE A LOT OF TROUBLE FOR A LOT OF PEOPLE. (LONG PAUSE) NOTHING ACTUALLY HAPPENED.

HA: UH . . GIVE ME A REASON THAT YOU WOULD WANT TO HURT US FOR.

SC: UH . . LIKE I SAID, YOU KNOW, THINGS GOING ON THAT KIND OF FORCED IN . . I'M TRYING TO SAVE MYSELF AT THE SAME TIME. I CAN GIVE YOU A NUMBER AND THE PERSON THERE CAN EXPLAIN IT A LOT BETTER THAN I CAN. HE WON'T TALK ON THE PHONE THOUGH.

HA: YEAH. WHO IS THAT PERSON? WHO YOU TALKING ABOUT?

SC: YOU KNOW WHO I'M TALKING ABOUT. I'M NOT GONNA SAY HIS NAME OR ANYTHING OVER THE PHONE.

HA: OH, I KNOW WHO YOU'RE TALKING ABOUT NOW.

SC: UH, HUH (CHUCKLING) (LONG PAUSE) YOU CAN TELL HIM ABOUT IT, BUT IT'S SOMETHING THAT DIDN'T . . CAUSE NOTHING DIDN'T HAPPEN, AND LIKE I SAY IF YOU FELT SOMETHING, I DON'T KNOW WHAT YOU FELT. IT SURE WASN'T ME. (LONG PAUSE) CAUSE WE WAS PROBABLY THERE ABOUT FIFTEEN MINUTES AT THE MOST.

HA: YEAH. I FELT SOMETHING AND IT HURT ME THAT NIGHT.

SC: I DON'T KNOW WHAT YOU FELT. I SURE DON'T. IT WASN'T ME. I KNOW THAT.

HA: WHAT WAS IN THAT BROWN BAG YOU HAD?

SC: NERVE MEDICINE FOR ME.

HA: OH.

SC: LIKE I SAID I WAS . . I WAS DOING SOMETHING I DIDN'T. YOU KNOW, REALLY WANT TO DO, BUT I HAD DO WHAT I HAD TO DO THAT NIGHT FOR THE REASON THAT YOU KNOW OF.

HA: YOU KNOW THAT NIGHT THAT YOU DONE THIS TO US, WHY DID YOU TOUCH RACHEL AND THEN HAVE SEX WITH ME?

Date:    8/06/02
Time:    14:29:17                         Offense Report                    Program: CMSROIL

C  > No. . . . : 1-02-004691                                          (Continued)

SC:    I DIDN'T HAVE SEX WITH YOU.
HA:    WHY DO YOU SAY YOU DIDN'T FOR?

SC:    CAUSE WE DIDN'T HAVE SEX.
HA:    BUT YOU TOOK YOUR CLOTHES OFF FOR SOME REASON.

SC:    I KNOW I DID.
HA:    HUH?

SC:    I KNOW I DID.  LIKE I SAID, I APOLOGIZED A THOUSAND TIMES TO
       YOU FOR THAT, BUT I DIDN'T HAVE . . YOU KNOW, I WAS FORCED INTO
       DOING WHAT I WAS DOING, TOO.  YOU KNOW, WHAT THE SITUATION WAS.
HA:    BUT WE WERE SCARED . . .

SC:    HUH?
HA:    WE WERE SCARED CAUSE WE THOUGHT YOU WERE GONNA HURT US LIKE YOU
       SAID YOU WAS THAT NIGHT.

SC:    NO, I DIDN'T SAY I WOULD HURT YOU.
HA:    ABOUT SOMETHING WITH THAT GUN.

SC:    NO, I DIDN'T.  I NEVER THREATENED YOU GUYS ONCE WITH THAT GUN.
HA:    I KNOW, BUT YOU SAID IF WE DIDN'T DO THAT YOU WAS GONNA GO AFTER
       SOME OF THE FAMILY MEMBERS.

SC:    NO  (LONG, LONG PAUSE) . . .
HA:    ARE YOU GONNA TRY TO DO THIS AGAIN TO US?

SC:    NO.  I FINALLY GOT AWAY FROM THAT GROUP.
HA:    OH, WHY NOT?

SC:    HUH?
HA:    I SAID WHY NOT?

SC:    (COUGHING)  I DIDN'T HEAR YOU.
HA:    I SAID WHY NOT?

SC:    WHY NOT WHAT?
HA:    ARE YOU GONNA TRY TO DO THIS AGAIN TO US?

SC:    NO, I AIN'T GONNA TRY NOTHING WITH NOBODY.  I SAID I FINALLY GOT
       AWAY FROM THAT GROUP SO NOW I DON'T HAVE TO DO ANYTHING I DON'T
       WANT TO.
HA:    I'M CONFUSED ABOUT THIS.

SC:    HUH?
HA:    I SAID I'M CONFUSED.

SC:    OH . . (CHUCKLE) . . .
HA:    WHY DID YOU WANT TO HURT US THAT NIGHT?

Date: 8/02/02
Time: 14:29:17

Offense Report

Program: CMS3011

(Continued)

No. . . . . : 1-02-004691

SC: I DIDN'T WANT TO. AND YOU KNOW THAT.
HA: BUT IT'S JUST THE FACT THAT YOU DID.

SC: LOOK, I WAS HURTING THAT NIGHT, TOO. YOU KNOW THE SITUATION
WHAT WAS GOING ON FOR ABOUT A MONTH THERE OR TWO. GET THAT
STRAIGHTENED OUT AND GET OUT OF THERE. THAT'S WHY I DIDN'T COME
AROUND FOR A LONG TIME. I DIDN'T WANT . . YOU KNOW . . I WANTED
TO GET OUT OF THE MESS I WAS IN WITH THAT GROUP. I DIDN'T WANT
TO HURT YOU OR YOUR MOM OR ANYONE ELSE. I DIDN'T WANT TO HURT
NOBODY.
HA: WHAT MADE YOU DO THAT?

SC: YOU KNOW.
HA: YOU KNOW THAT NIGHT ME AND RACHEL BOTH TOLD YOU WE DIDN'T WANT TO
BE AT THAT MOTEL ROOM WITH YOU?

SC: UUM, HUMM. AND I TOLD YOU THAT DIDN'T (UNINTELLIGBLE) . . .
I WAS FORCED TO DO THINGS THAT I DIDN'T WANT TO DO, BUT I DID.
I FINALLY GOT OUT OF THAT MESS (UNINTELLIGBLE) . . . AND LIKE I
SAID I APOLOGIZED TO YOU AT LEAST A THOUSAND TIMES FOR THAT
NIGHT. THAT'S THE REASON I STAYED AWAY FROM YOU, YOU AND MARY
JO, I DIDN'T WANT YOU GUYS TO BE INVOLVED ANYMORE AND GET HURT
OR ANYTHING ELSE.
HA: WHY DID YOU MAKE US STAY THERE WHEN WE DIDN'T WANT TO BE THERE?

SC: FOR THE SAME REASON I WAS THERE AND DIDN'T WANT TO BE THERE.
HA: WHY DID YOU PUT ON A CONDOM THAT NIGHT?

SC: I DIDN'T WEAR A CONDOM.
HA: OH

SC: I CAN'T DO ANYTHING. WHY SHOULD I WEAR A CONDOM?
HA: DID YOU THINK I WOULD GET PREGNANT?

SC: FROM WHAT, NO SEX?
HA: WHAT DO YOU MEAN NO SEX?

SC: WE DIDN'T HAVE SEX SO HOW COULD YOU GET PREGNANT?
HA: YOU STUCK IT IN.

SC: NO, I DIDN'T.
HA: YES, YOU DID.

SC: NO, SURE DIDN'T.
HA: YES, YOU DID.

SC: NO, I DON'T KNOW WHAT YOU FELT, BUT IT WASN'T ME. THAT'S THE
TRUTH, TOO. GOD STRIKE ME DEAD RIGHT NOW. I DIDN'T DO ANYTHING
THAT NIGHT.
HA: WELL WHY DID YOU GET ON TOP OF ME THAT NIGHT IF YOU DIDN'T DO
ANYTHING?

Date:   8/02/02
Time:  14:29:17
Offense Report
Program: CMS301L

e No. . . . : 1-02-004691

SC:  I DIDN'T GET ON TOP OF YOU.
HA:  YES, YOU DID.

SC:  NO, I DIDN'T.
HA:  OH. YES, YOU DID.

SC:  UH, UH
HA:  YES, YOU DID.

SC:  (CHUCKLING) . . .
HA:  DON'T GET ME STARTED.

SC:  I DON'T WANT TO GET YOU STARTED. BUT I DIDN'T GET ON TOP OF YOU
     THAT NIGHT.
HA:  YES, YOU DID.

SC:  NO
HA:  YES, YOU DID, STAN.

SC:  WHY WOULD I GET ON TOP OF YOU I COULDN'T DO ANYTHING?
HA:  YES, YOU DID GET ON TOP OF ME.  YOU HAD . . YES, YES.

SC:  NO
HA:  I REMEMBER THAT NIGHT YOU GOT ON TOP OF ME AND STUCK IT IN.

SC:  LOOK, I CAN PROVE THAT I (UNINTELLIGIBLE) . . .   WHY DO YOU THINK
     ONE OF THE REASONS DIANNE LEFT?
HA:  WHAT ARE THE REASONS YOU DONE WHAT?

SC:  WHAT DO YOU THINK ONE OF THE REASONS DIANNE LEFT?
HA:  I THOUGHT YA'LL WERE JUST HAVING PROBLEMS OR SOMETHING.

SC:  THAT'S ONE OF THE PROBLEMS.
HA:  OH, I DIDN'T KNOW.

SC:  (CHUCKLING) . . . (COUGHING) . . . VIAGRA DOESN'T EVEN WORK ON
     ME.  I DON'T KNOW WHAT YOU FELT THAT NIGHT, BUT IT SURE WASN'T
     ME.
HA:  WHY DID YOU MAKE US STAY IN THE BATHROOM AND GET UNDRESSED THEN?
     AND YOU WERE SITTING ON THE END OF THE BED, UNDRESSED YOURSELF
     AND THEN YOU CALLED RACHEL IN THERE FIRST, AND AFTER YOU GOT
     YOU DONE HER THEN YOU CALLED ME IN THERE, AND THEN YOU GOT ON
     TOP OF ME.

SC:  I DON'T REMEMBER GETTING ON TOP OF YOU THAT'S FOR SURE.
HA:  I REMEMBER.

SC:  CAUSE I REMEMBER A LOT ABOUT THAT NIGHT, TOO.  I DON'T REMEMBER
     THAT.
HA:  I REMEMBER YOU GOT ON TOP OF ME.

(Continues)

No. . . . : 1-02-004691

SC: I DON'T REMEMBER THAT.
HA: KNOWING GOOD AND WELL I DIDN'T WANT TO BE THERE.

SC: WELL . . .
HA: WHAT DO YOU REMEMBER THAT NIGHT?

SC: I (UNINTELLIGBLE) . . .
HA: LIKE WHAT?

SC: I REMEMBER BEING SO SCARED MY HEART WAS SKIPPING . . POUNDING
    ON ME BAD, WONDERING WHAT THE NIGHT WAS GOING TO BE AT THE END
    OVER AND I HAD A (UNINTELLIGBLE) . . . LIKE I SAID I WAS SCARED
    MORE THAN YOU GUYS WAS.
HA: I WAS SCARED MORE THAN . . ME AND RACHEL WAS SCARED MORE THAN YOU
    WAS PROBABLY.

SC: NO, YOU DON'T KNOW WHAT THE CIRCUMSTANCES . . YOU KNOW THE
    CIRCUMSTANCES, BUT I DON'T KNOW IF YOU BELIEVED THEM OR NOT,
    BUT YOU KNOW THE CIRCUMSTANCES.
HA: I WAS SCARED BECAUSE OF THAT GUN.

SC: WELL YOU KNEW IT WAS UNLOADED AND YOU KNOWED THERE WASN'T NO
    BULLETS IN IT. I GOT IT OUT OF THE TRUCK BECAUSE I DIDN'T WANT
    TO LEAVE IT IN THE TRUCK. I DON'T EVEN HAVE A GUN NOW.
HA: OH

SC: LIKE I SAID I BEEN TRYING TO RECONCILE EVERYTHING THAT I HAD TO
    DO OR THINGS THAT HAPPENED DURING THAT TIME PERIOD WITH THAT
    GROUP OF THEM UP THERE. TRY . . THAT'S A TIME OF MY LIFE I
    DON'T WANT TO REPEAT OR GO THROUGH AGAIN. ALL BECAUSE OF . .
    THE MISTAKES THAT I MADE.
HA: WHY DID YOU HAVE TO HURT US THAT WAY FOR?

SC: I TOLD YOU THE REASON AND THE CIRCUMSTANCES. AND IT'S YOUR
    CHOICE. YOU KNOW. UH . . I MADE MY CHOICE, TOO. YOU KNOW, AND
    MY CHOICES WAS TO TALK TO YOU GIRLS ABOUT IT.
HA: WHAT WERE . . HOLD ON . . WHAT REASON CAUSE IT WAS NOT OUR
    CHOICE?

SC: WELL . . I DON'T WANT TO GET INTO THAT PART OF IT OVER THE
    PHONE.
HA: O.K. WELL . . .

SC: BUT I DIDN'T . . AS FAR AS YOUR FEELINGS, I DON'T KNOW WHAT YOU
    FELT, BUT I DIDN'T (UNINTELLIGBLE) . . . UH . . EVER SINCE ABOUT
    '98.
HA: WELL, UH . . JUST DON'T COME AROUND ME ANY MORE.

SC: OH, I WON'T.
HA: O.K.

SC: (UNINTELLIGBLE) I'LL STAY AWAY FROM THEY.

                                                              (Continued)

Case No. . . . : 1-02-004691

HA:   O.K.   BYE.

SC:   LIKE I SAID, I'M SORRY, FOR WHAT HAPPENED.  YOU KNOW.
      DUE TO THE CIRCUMSTANCES THAT WAS THE BEST ROUTE TO GO.
      LIKE I SAID I'M SORRY AND I'LL APOLOGIZE TO YOU AGAIN ABOUT IT.
      I'M SORRY, AND IF YOU DON'T WANT ME SEEING YOU THAT'S, YOU KNOW,
      YOU DON'T HAVE TO SEE ME.
HA:   RAPING ME WAS THE BEST ROUTE.

SC:   I DIDN'T RAPE YOU.
HA:   STAN, I DIDN'T WANT TO HAVE SEX WITH YOU.

SC:   I DIDN'T RAPE YOU.  AND WE DIDN'T HAVE SEX.
HA:   YES, WE DID.

SC:   NO, WE DIDN'T.  LIKE I SAID, I'M SORRY, I NEED YOU AND THE FAMILY
      AS FRIENDS, I UNDERSTAND AND I WON'T COME AROUND YOU OR BOTHER
      YOU OR ANYTHING ELSE AGAIN.
HA:   LET ME ASK YOU ONE MORE QUESTION . . .

SC:   ALRIGHT
HA:   WHY DID YOU MAKE US GET NAKED IN THAT MOTEL ROOM THAT NIGHT?

SC:   YOU KNOW WHY.
HA:   WHY?

SC:   I AIN'T SAYING IT CAUSE YOU KNOW WHY.
HA:   WHY?

SC:   (COUGHING)  . . . .
HA:   WHAT ABOUT RACHEL?

SC:   WHAT ABOUT RACHEL . . .
HA:   YEAH, WHAT YOU DONE TO HER THAT NIGHT.

SC:   I REALLY DIDN'T DO ANYTHING TO HER.
HA:   YEAH, YOU DID.

SC:   NO.  (UNINTELLIGBLE)
HA:   IF WE DIDN'T HAVE SEX WHAT DO YOU CALL IT THEN?

SC:   I DON'T KNOW.  WE DIDN'T HAVE SEX.  THERE WAS NO SEX PERFORMED.
HA:   YES, THERE WAS.

SC:   NO, THERE WASN'T.
HA:   YES, THERE WAS.

SC:   NO, IT WASN'T.
HA:   ALRIGHT, I GUESS I'LL LET YOU GO THEN.

SC:   ALRIGHT

Date:  8/08/02                    DOTHAN POLICE DEPT              Program: CMS30LL
Time:  14:29:17                     Offense Report

(Continued)

No. . . . . : 1-02-004691
HA:  O.K.  BYE

                    END  OF  CONVERSATION

STATE'S EXHIBIT NUMBER 3

Case No. . . . . : 1-02-004691                                    (Continued)
                         Entered By.: HARVIN, BRIAN T.              6/17/02

Statement of: Stanley Lee Cardill

Statement Taken by: Investigator Brian Harvin CID, Dothan Police
      Department, June 12, 2002, time is 1547 hours.

BH:   What is your name?
SC:   Stanley Lee Cardill.

BH:   And your current address?
SC:   747 Pouncy Farm Road Daleville Alabama 36322.

BH:   And your date of birth?
SC:   11/30/58.

BH:   Are you employed anywhere?
SC:   No.

BH:   Have you been advised of your rights?
SC:   Yes sir.

BH:   Do you understand these rights?
SC:   Yeah.

BH:   And is this your signature on this rights waiver form?
SC:   Yeah.

BH:   Have you been promised, coerced or threatened in any way to give
      this statement?
SC:   No.

BH:   Are you giving this statement voluntarily?
SC:   Yeah.

BH:   Do you understand that I'm tape recording this statement?
SC:   Yeah.

BH:   OK. And this is about an incident that happened a year ago in
      Dothan Alabama approximately a year ago, a little over a year
      ago. Ah, and we talked about it just a few minutes ago. You
      were in route to an auction, is that correct?
SC:   Yeah.

BH:   And who was with you while you were going to an auction?
SC:   Ah, Heather and Rachel Taylor.

BH:   Do you remember where the auction was?
SC:   Still City Florida.

BH:   OK. Was this a normal place that you went to?
SC:   Yeah.

Offense Report

(Continued)

No. . . . . : 1-02-004691

BH: Was it normal for Heather and Rachel to be with you?
SC: Yeah they went most of the time with me.

BH: OK. What nights did y'all go to the auction?
SC: Fridays.

BH: Fridays? Did you ever go any other times?
SC: Use to go on Tuesdays until the auctioneer pass away.

BH: OK.
SC: Then they changed it to Friday nights only.

BH: All right.  And while you were in route to the auction ah, what happened?
SC: Ah like always, we joked around and started picking on each other and things.

BH: What were you picking on each other about?
SC: Ah, just picking you know, joking around just picking on you know. And then we started talking about stooping one night you know.

BH: Stooping where?
SC: Ah, well we didn't talk about the rest of it to began with.

BH: What was the purpose for the stop?
SC: Just, I like I said really don't know what all could come about by it. Ah, more like a game or a joke I guess is the way it started out.

BH: A game or joke about what?
SC: Ah, about me and Heather being married and things cause she told people we was married before.

BH: OK. And this particular evening you came to Dothan?
SC: Um hum.

BH: Do you remember where you went?
SC: No I don't, I remember where but I don't really know, I don't know the name of the place.

BH: Can you describe to me where it is?
SC: Ah, it's there by the bypass and 231.

BH: Can you, do you remember any land marks around it?
SC: Ah, there's going to be a Hardees beside it.

BH: OK. If I, if I said the Holiday Inn would that be, would that jog you memory?
SC: That could be right I don't, see I don't remember name of it (?).

Date: 8/02/02                          Offense Report                      Program: CM507
Time: 14:29:17                                                                      70

No. . . . . : 1-02-004691

BH:    OK. Do you remember if there was a Winn Dixie next to it,
       Waffle House, there was a K Mart close by to it?
SC:    K Mart's across...kind of catty corner from it yeah.

BH:    OK. And you came, you made it to the motel here in Dothan at
       the Holiday Inn?
SC:    Um hum.

BH:    Ah, you remember what time that was?
SC:    No I don't.

BH:    You remember it it was day light or dark?
SC:    Seems to me it was dark.

BH:    OK. What happened when you got to the motel?
SC:    We got a room and went to the room and ah, we got inside, I
       told them you know to go in the bathroom and take their clothes
       off and they went in so after they got done taking their
       clothes off so I got down to my underwear and socks.

BH:    OK. Ah, do you remember if they came out together from the
       bathroom or if one came out and the other one stayed or you
       remember how that happened?
SC:    Seems to me they both came out and then Heather went back in.

BH:    Heather being the eighteen year old?
SC:    Yeah.

BH:    OK. So...
SC:    And Rachel stayed out.

BH:    Rachel stayed out?
SC:    If I remember right.

BH:    Do you remember how Rachel was dressed? If she had anything on?
SC:    I can't remember if Rachel had anything on or not.

BH:    OK. What happened when Rachel came out of the bathroom?
SC:    She laid down on the bed beside me and I rubbed her stomach and
       (?) have touched her breast once.  Then she turned over and I
       rubbed her back.

BH:    Her back being?
SC:    Her back.

BH:    Her back and not her butt?
SC:    No the back.

BH:    OK.
SC:    And the she got up and she went back into the bathroom and
       Heather came out and she lay down on the bed beside me, beside

Date:    9/02/02
Time:   14:29:17                          Offense Report                          Program: CMS30

File No. . . . : 1-02-004691                                        (Continued)

there on the bed where I was sitting.

BH:    Um hum.
SC:    I can't remember if I rubbed her stomach or not but I do
       remember I rubbed her legs and thighs area and we talked a
       while, for a couple of minutes or so. And I told her just to
       relax and nothing is going to happen. She said she is relaxed
       I said OK. And she got up and she went in the bathroom they
       were there about fifteen, ten fifteen minutes at the most.

BH:    OK. When ah, Rachel the younger one was there you said you
       touched her breast?
SC:    I touched her breast one time yeah.

BH:    Her stomach?
SC:    Yeah.

BH:    Ah, did you touch her around her vagina area?
SC:    No.

BH:    In between her legs?
SC:    No.

BH:    Round her butt?
SC:    No.

BH:    All right.
SC:    I touched her back and ah, I touched her breast once and then I
       rubbed her stomach and then I rubbed her back and that her back
       side is her back and I don't remember touching her anywhere
       else (?).

BH:    When you say that you touched her, was this a caressing touch
       or or what was it?
SC:    Ah, like a massage, a massaging touch like.

BH:    Do you remember if she ever said anything?
SC:    I remember her saying, ah, is her time up and I told her yeah
       go ahead and that's when she got up and left.

BH:    And that's when Heather came in?
SC:    That's when Heather came out.

BH:    And Heather, did she lay down on the bed?
SC:    Yeah.

BH:    OK. And where were you in relation to where she was?
SC:    I was sitting on the side of the bed.

BH:    OK. And with Heather you rubbed, or touched, is that considered
       massage, do you consider that massaging?
SC:    I massaged her stomach and ah, leg area and thigh area and

Date:  9/03/02                              Offense Report                          Program: CMS001
Time:  14:29:17

--------------------------------------------------------------------------------

                                                                            (Continued)

No. . . . . : 1-02-004691

          legs.

    BH:    OK. so it would be the inside, the inside of her legs?
    SC:    Yeah right in this area here, the thigh area.

    BH:    OK. Did you ever touch her vagina?
    SC:    Ah, I like we was talking about I might have brushed against it
           but I didn't touch it.

    BH:    OK.
    SC:    No.

    BH:    Did you massage her stomach?
    SC:    Yeah I rubbed her stomach for her.

    BH:    Did you massage her breast?
    SC:    No.

    BH:    Back?
    SC:    No.

    BH:    Butt?
    SC:    No.

    BH:    OK. Anything else?
    SC:    No she wanted to know if her time was up thangs so it look like
           they was on a time system, like one didn't want to be in there
           longer than the other or something and I didn't you know.

    BH:    One didn't want to be in there longer than the other one?
    SC:    That's what it sound like yeah like they had a choice on time
           or whatever.

    BH:    Did they want to be there?
    SC:    Well I don't, I don't know. Ah, when we first started talking
           about it things was like a joke or a game or something. Ah, I
           think you know once we got, actually got down to it there after
           we got there they I don't think they wanted to be there.

    BH:    Did you ah, wear, did you carry a gun into the motel room?
    SC:    I had a be bee gun on me yeah.

    BH:    What does the be bee gun look like?
    SC:    Ah, I don't know that much about guns but an, probably like a
           9mm I guess.

    BH:    OK.
    SC:    Similar to that.

    BH:    Where was it when the three of you were in the motel room?
    SC:    In my pants pocket.

                                                            (Continued)

Case No. . . . : 1-02-004691

BH:    OK. Did you ever have it on a table or a night stand?
SC:    No I never took it out of my pants pocket.

BH:    OK. Ah, did you ever threaten the girls with the gun?
SC:    No I never, I never threatened the girls with the gun.

BH:    Can you describe the motel room to me? Do you know if there
       was one or two beds in there?
SC:    I think there was two beds.

BH:    Do you remember whenever you went in the door, do you remember
       which side of the room the beds were on?
SC:    Ah, let's see. I want to say the left side I think (?).

BH:    If you can't remember that's OK...
SC:    Yeah, I believe they was on the right side.

BH:    OK.
SC:    I believe they was on the right side.

BH:    How long, how long did y'all stay in the motel?
SC:    Ah, from the time we got there till the time we left probably
       about ten to fifteen minutes. It was just...

BH:    Where did you go after you left the motel?
SC:    It was either like, it was either like Applebee's or TGIF
       Fridays or something like that.

BH:    OK. So you went to a restaurant?
SC:    Yeah.

BH:    Was...
SC:    And then we just kept we...

BH:    Could you have gone to Ruby Tuesday's?
SC:    It may have been Ruby Tuesday's (?).

BH:    OK.
SC:    I know it was some place like that. And we just we kept you
       know we was still picking and joking on each other.

BH:    Did you ever go to the auction?
SC:    That night, no.

BH:    What happened after you left ah, after you got through eating at
       the restaurant?
SC:    We went back to their place and dropped them off and talked, I
       was talking with their grandmother a while.

BH:    Where were they living during this time?
SC:    In Enterprise.

Date: 8/02/02
Time: 14:29:17

Offense Report

Program: INC601 74

(Continued)

No. . . . : 1-02-004691

BH: OK. OK. So, did you think anything was wrong about going to a motel and getting naked with these two girls?

SC: It didn't feel right (?).

BH: Do you know why you did it?

SC: No I don't. To be very honest I don't. I've never made a move on them or would never suggested anything or played around like that since that night. We've been (?). You know I've took them out and they, let them drive my truck and thing (?) since then.

BH: Do you know why this happened that night?

SC: No I don't know.

BH: Why you, the three of you arrived at a motel room and got naked?

SC: No I don't know how it come about.

BH: You said there was talk on the way down...

SC: We talked about it...

BH: Who initiated that conversation?

SC: Now that I don't remember. Cause we was always having crazy conversations like that when we was together.

BH: Did it appear that they were crying anytime while you were in the motel?

SC: I don't remember if they was.

BH: After you left the motel did it appear that they were crying or upset or anything?

SC: No, no cause we went out the door and the first thing they said they was hungry ready to go eat.

BH: And you said that they appeared they were on a time schedule like they didn't want to be there?

SC: Well I don't know but I think was it all got out of hand you know like I said, it just went further than any, any one of us really wanted it to I guess.

BH: Do you think what you did...

SC: We didn't mean it to go that far I guess.

BH: OK.

SC: (?).

BH: Do you think what you did was wrong?

SC: Yeah.

BH: Do you know what sexual intercourse is?

SC: Um hum.

BH: Did you have sexual intercourse with either of these two...

SC: No...

Date:   8/02/02
Time:   14:29:17

Offense Report

Program: CMS301C   77

48

(Continued)

Case No. . . . . : 1-02-004691

BH:    That night?
SC:    No, never.

BH:    And...
SC:    I never had sexual intercourse with either one of those girls.

BH:    How are you positive on that, cause you sound positive?
SC:    Ah, to...well maybe I don't know what sexual intercourse is
       maybe you need to explain it to me then.  To me it's
       penetration of you know.

BH:    Right, your penis, their vagina, you...
SC:    That's what I thought yeah it mean...

BH:    You penetrate her vagina.
SC:    No that never happened.

BH:    OK. And you're positive of that?
SC:    Yeah I'm very positive of that.

BH:    And why are you positive of that?
SC:    Because I've been impotent for quite a few years.

BH:    OK. Who, has a doctor seen you for that?
SC:    Yes sir.

BH:    Do you know that doctor's name?
SC:    I cannot remember his name. I don't, like I say it Loftin,
       Laftin or something like that at Southeast Medical.

BH:    Southeast Medical Center?
SC:    Yeah.  I'm positive that's where it was at. It's on the same
       floor as ah, Doctor Allan Schwadron office is on, cause I
       remember seeing his name on the, just across the hall.

BH:    Schwadron, how do you say the last name?
SC:    Schwadron I think is how you pronounce it.

BH:    All right.  Have you done this with Heather and Rachel since
       that day.
SC:    Ah, what do you mean?

BH:    Gone to a motel room and got naked?
SC:    No, no. And like I say we've hung out quite a few times since
       then.

BH:    Do, while either OK, while Rachel was in the, the motel room
       she was laying on the bed.
SC:    Um hum.

BH:    Where were you doing that time?

76

Date: 8/02/02
Time: 14:29:17
Case 1:05-cv-00785-MEF-WC   Document 9-2   Filed 09/27/2005   Page 78 of 128
Offense Report
Program: CMSSOLL

(Continued)

No. . . . : 1-02-004691

SC:  I stood on the side of the bed with her.

BH:  Did you ever insert a finger into her vagina?
SC:  No.

BH:  It's not the same as sexual intercourse but.
SC:  Yeah but no.

BH:  OK. Did you rub her vagina?
SC:  No I didn't (?) no.

BH:  You said that you massaged her breast.
SC:  No I said I touched her breast one time.

BH:  Did you kiss her?
SC:  No I didn't kiss either one of the girls.

BH:  Neither one, Heather nor Rachel?
SC:  I don't remember kissing either one of them.

BH:  Do you remember if either one of them asked you not to?
SC:  No I don't. I remember Heather asking that an, before we
     started that she didn't want to get pregnant I told her there
     was no danger of her getting pregnant. Cause if you don't have
     intercourse you know there's no danger of getting pregnant.

BH:  OK. Can you think of anything else that happened that evening?
     What did you do with the motel room key?
SC:  Left them in the (?).

BH:  OK. Can you think of anything else?
SC:  No not really cause like I say it's was pretty quick.

BH:  Is what you telling me the truth?
SC:  Yes sir.

BH:  This concludes your interview? Same people present, same
     location, same date.  Time is 1604 hours.

     FRJohnson

* * * * * * * * * * * * * * * END OF REPORT * * * * * * * * * * * * * * * *

STATE'S EXHIBIT NUMBER 4

SX#4

# DOTHAN POLICE DEPARTMENT

NAME _Stanley Lee Caudill_ PLACE _CID_

CASE NUMBER _1-02-004691_ DATE/TIME _06-12-2002    1530_

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in Court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish.

If you decide to answer questions now, without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk with a lawyer.

## WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me to get me to make a statement.

SIGNED _____

WITNESS_____    EDUCATION _10th - GED_

WITNESS_____

TIME_____

I have explained the right to remain silent and the right to counsel to _____ as well as all other rights to which he is entitled prior to questioning or interrogation by law enforcement officers. After having these rights explained, he refused to sign this statement.

SIGNED _____

WITNESS_____

TIME_____

STATE'S EXHIBIT NUMBER 5

CERTIFICATION OF EVIDENCE

I, Judy Byrd, Clerk of the Circuit Court of Houston County, Alabama do hereby certify that State's Exhibit Number 5 is of such size and bulk ( Micro Cassette ) that it is incapable of being included in the transcript, but will be forwarded to Court of Criminal Appeals if requested by the Court.

Judy Byrd, Clerk

Criminal Appeal No._____

---

## REPORTER'S TRANSCRIPT ORDER -- CRIMINAL

---

TO BE COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF APPEAL OR FILED WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.

XX CIRCUIT COURT __DISTRICT COURT __JUVENILE COURT OF **HOUSTON** COUNTY

**STANLEY LEE CAUDILL**
    Appellant,

v.

**STATE OF ALABAMA**
    Appellee.

---

Case Number: CC-02-1141

Date of Judgment/Sentence/Order: 01/10/03

Date of Notice of Appeal:
Oral:          Written: 01/13/03
Indigent Status Granted:  Yes

FILED JAN 23 2003
JUDY BYRD, CLERK
HOUSTON CO., AL

FILED APR 14 2003
JUDY BYRD, CLERK
HOUSTON CO., AL

---

**PART 1.  TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT REPORTER'S TRANSCRIPT:**

I certify that no reporter's transcript is expected and that the record on appeal shall consist of the clerk's record only.  If the appeal is from District Court or Juvenile Court, I also certify (1)  that a stipulation of facts will be included in the clerk's record and that the appellant waives his right to a jury trial if so entitled; or (2) that the parties have stipulated that only questions of law are involved and that the questions will be certified by the Juvenile/District Court for inclusion in the clerk's record (See Rule 28(A)(1), Alabama Rules of Juvenile Procedure, and ' 12-12-72, *Code of Alabama*, 1975).

---

Signature                                    Date
Shaun McGhee

**PART 2.  DESIGNATION OF PROCEEDING TO BE TRANSCRIBED.**  Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case.

MARK PROCEEDINGS REQUESTED              COURT REPORTER(S)
                                         William R. Moeglin
                                         P. O. Box 6406
A.  XX TRIAL PROCEEDINGS                 Dothan, AL 36302 _____

B.  XX  ORGANIZATION OF THE JURY         Same _____

C.  XX  ARGUMENTS OF COUNSEL             Same _____

IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL.

ADDITIONAL PROCEEDINGS REQUESTED       DATE        COURT REPORTERS

D. All Pre-Trial Hearings _____   _____     William R. Moeglin _____

**IMPORTANT NOTICE**: The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective.  Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not specifically designated on this form for inclusion in the reporter's transcript.  A general designation such as all proceedings is not sufficient.  (See Rule 10(c)(2)), A.R.App.P.)

**PART 3.  MUST BE SIGNED IF THE APPEAL WILL HAVE A COURT REPORTER'S TRANSCRIPT:**

I certify that I have distributed this form as set out below.  I also certify (1) that I have made satisfactory financial arrangements with each court reporter listed above for preparing his or her portion of the reporter's transcript herein requested; or (2) that the appellant proceeded at trial as an indigent and that status has not been revoked; or, (3) that the appellant has been given permission to proceed on appeal in forma pauperis.

_____                1/22/03                    **FILED**
Signature                              Date
B. Shaun McGhee                                                    JAN 23 2003

                                                                  JUDY BYRD, CLERK
                                                                  HOUSTON CO., AL

## REPORTER'S INDEX TO THE TESTIMONY

CAPTION                          3

MOTION TO CONSOLIDATE            4

RULING OF THE COURT              5

VENIRE QUALIFIED                 6

VOIR DIRE                        6

JURY STRUCK                      6

JURY INSTRUCTIONS                7

OPENING STATEMENTS               19

        State's Evidence

1.  Heather Austin

        Direct                   20

        Cross                    40

        Redirect                 53

2.  Heather Austin (Recalled)

        Direct                   59

        Cross                    61

        Redirect                 63

        Recross                  63

3.  Rachel Taylor Mitchell

        Direct                   64

        Cross                    78

        Redirect                 91

        Recross                  92

REPORTER'S INDEX TO THE TESTIMONY CONTINUED

4.  Brian Harvin

  Direct                        95

  Cross                         106

STATE RESTS                       107

MOTION FOR ACQUITTAL              108

RULING OF THE COURT               109

CHARGE CONFERENCE                 112

DEFENDANT RESTS                   118

TESTIMONY CONCLUDED               118

CLOSING ARGUMENTS                 119

ORAL CHARGE OF THE COURT          120

EXCEPTIONS TO THE ORAL CHARGE     141

ALTERNATES DISCHARGED             141

ADDITIONAL EXCEPTIONS TO CHARGE   143

RULING OF THE COURT               144

JURY VERDICT                      146

SENTENCING HEARING REQUESTED      148

BOND HEARING                      149

PROCEEDINGS CONCLUDED             152

CAPTION                           153

SENTENCING HEARING                154

  Defendant's Evidence

1.  Steven Eugene Brophy

  Direct                        154

REPORTER'S INDEX TO THE TESTIMONY CONTINUED

Steven Eugene Brophy (Continued)

  Cross         156

COLLOQUY REGARDING ENHANCEMENT  157

SENTENCING OF THE DEFENDANT  164

PROBATION APPLICATION  165

PROCEEDINGS CONCLUDED  166

REPORTER'S CERTIFICATE  167

CERTIFICATE OF COMPLETION  169

### REPORTER'S INDEX TO THE EXHIBITS

| PARTY: | | DESCRIPTION: | MARKED: | RECEIVED: |
|---|---|---|---|---|
| State's | #1 | Micro Cassette | 37 | 57 |
| | #2 | Transcript | 38 | 58 |
| | #3 | Transcript | 95 | 104 |
| | #4 | Waiver Form | 97 | 103 |
| | #5 | Micro Cassette | 102 | 104 |

IN THE CIRCUIT COURT

OF HOUSTON COUNTY

ALABAMA


STATE OF ALABAMA            *
                           *
                           *
VS.                        *     CASE NOS.CC02-1141, 1142
                           *
                           *
STANLEY LEE CAUDILL         *


A P P E A R A N C E S:


FOR THE STATE:                HON. ERIC C. DAVIS
                              Assistant District Attorney
                              Dothan, AL


FOR THE DEFENDANT:            HON. JACK A. BLUMENFELD
                              Attorney at Law
                              Dothan, AL


On December 5, 2002, beginning at 2:00

o'clock P.M., the above styled and numbered causes

came up for trial on charges of Rape, First Degree

and Sexual Abuse, First Degree before the

Honorable Larry K. Anderson as Presiding Judge.

The following proceedings were held in Court Room

A of the Houston County Courthouse Annex, Dothan,

Alabama, to-wit:

THE COURT:  This is the State of Alabama Versus Stanley Lee Caudill.  There are two cases; there is an Indictment for Rape, First and there is a Indictment for Sexual Abuse, First Degree. The State filed a Motion To Consolidate.  Is there any objection to that motion?

MR. BLUMENFELD:  Well, judge, I would not like to have them together, but legally I received a copy of this pleading from Mr. Davis yesterday. Legally I am aware, under the law, the State's Motion To Consolidate would be, is due to be granted.  As I said, Your Honor, I know this is not the most legal way to say it, so I don't agree to the consolidation.  But, legally, I understand the Court can grant it.

THE COURT:  Okay.  Thank you.  They allegedly occurred the same date, same incident and time?

MR. DAVIS:  Yes, sir.  Two victims, same motel, same date and time, within minutes of each other.

THE COURT:  Are you alleging common plan or scheme?

MR. DAVIS:  Part of the res jusdica.

THE COURT:  Res judica?

MR. DAVIS:  Yes, sir.

THE COURT:  The State's Motion To Consolidate is granted.

MR. DAVIS:  Thank you.

THE COURT:  All right.  Y'all be ready after I take this plea and we will strike a jury on these two cases.

MR. DAVIS:  Yes, sir.

(Thereupon, a recess was called and taken in the above styled and numbered causes for the reason stated.  Upon completion of said recess, all parties returned to the presence and hearing of the Court Room and the Jury Venire took their places in the audience area and the following proceedings were held, to-wit:)

THE COURT:  The Court calls the cases of the State of Alabama Versus Stanley Lee Caudill. Is the State ready, Mr. Davis?

MR. DAVIS:  Yes, sir.

THE COURT:  Is the Defense ready, Mr. Blumenfeld?

MR. BLUMENFELD:  Yes, Your Honor, we are ready.

(Thereupon, the Jury Venire was qualified by the Court and Voir Dired by the Attorneys of Record and a Trial Jury was struck. After that, the following proceedings were held, to-wit:)

THE COURT: Ladies and Gentlemen, we got through a little bit earlier than anticipated and that is good. We have a jury selected in the cases of the State of Alabama Versus Stanley Lee Caudill. As your name is called, come forward and have a seat in the Jury Box to my left.

(Thereupon, the Trial Jury took their places in the Jury Box and the following proceedings were held, to-wit:)

THE COURT: Gentlemen, approach

(Thereupon, the Attorneys of Record and the Court Reporter approached the Bench as instructed and the following proceedings were held out of the hearing of the Trial Jury, to-wit:)

THE COURT: Any motions from either side?

MR. DAVIS: Not from the State.

MR. BLUMENFELD: No, Your Honor.

THE COURT: Okay.

(Thereupon, the above named individuals returned to their places in the Court Room and the following proceedings were held in the presence and hearing of the Trial Jury, to-wit:)

THE COURT:  Swear in the jury, please, ma'am.

(Thereupon, the Trial Jury was sworn in by the Clerk, Mrs. Byrd and the balance of the Jury Venire was discharged.  After that, the following proceedings were held in the presence and hearing of the Trial Jury, to-wit:)

THE COURT:  Now, Ladies and Gentlemen, those of you selected for the trial of this case, take heart; you will not be long behind them.  I do want to cover three areas with you before you leave this afternoon.  As I told you earlier, we will not try this case this afternoon, but we will be ready to try the case at 9:00 o'clock Monday morning.  We have a docket call at 8:30, at which time we will call the docket on those cases that remain pending and address those issues.  Then, of course, we will begin the trial of this case or cases at 9:00 o'clock.

Let me cover those topics with you; the first I call housekeeping instructions, the second is I want to give you a Reader's Digest version of how this trial will proceed Monday morning and then the third is to discuss with you briefly your role and your duties and responsibilities as Jurors in these cases.

Now, the housekeeping instructions. Ladies and Gentlemen, it is my practice to take a recess approximately every hour and a half. That is not for my benefit. Suffice it to say, that we all have personal needs and in the event we go a little longer than an hour and a half, which we are apt to do from time to time and in the event an hour and a half is too long, all you need do is raise your hand and I will stop immediately. Keep that in mind as we go through the trial of this case.

Now, it is my best judgment; it is only a guess, because you never know what comes up during a trial, but it is my best judgment that we will come close to finishing this, these cases Monday afternoon sometime. It may carry over a little until Tuesday; but, I tell you that just for your own benefit. Nonetheless, we will devote whatever

time it takes to try these cases properly.  But, for your own edification, I wanted to let you know that.

You have heard me say this once already and you will hear me say it repeatedly to not discuss the case among yourselves or allow anyone to discuss it with you.  In fact, if anyone should approach you and attempt to discuss it with you, bring it to my attention immediately.  There are good reasons for that instruction, grounded, of course, in the law and in commonsense.  I think if we all thought about it a moment, we would come to the same conclusion.  The reason I say do not discuss this case among yourselves is simply this; the law says you are not to discuss this case among yourselves because you are the Jury in this case and you are to decide this case solely on the evidence presented to you.  And, right now, there is no evidence before you.  It is only after you have heard from both sides and I have charged you with the law and released the two alternates that you would be able to go back and discuss this case as a deliberative body.  Only then can you discuss the case among yourselves.  The business about not discussing the case with others or allowing others

to discuss it with you; well, that is simple, too.

You are to decide this case on the law and the

evidence presented to you in this Court Room and

not something that you hear out in the hall or out

in the parking lot. And, that is why I say that

to you. In fact, if anybody attempts to discuss

this case with you, bring it to my attention

immediately.

While we are on that subject, you will see

the attorneys, of course, in the Court Room but

you may see them in the hall. And, at times, you

may think that he is rude, he didn't talk to me.

Well, they have instructions from the Court not to

talk to you and to avoid any appearance of

impropriety by discussing things with a Juror.

They won't discuss this case, but somebody might

think they are and that is the reason they may not

speak with you in the hall when they see you.

Now, there has been no mention, as yet, of

the scene where these events allegedly occurred.

Sometime Monday morning, there will be and I say

that for this reason: You are not to go by and

make any independent examination of any scene that

is mentioned in this case or these cases. The law

says it would be improper for you to do so.

Now, it is my practice to keep alternates in any jury trial, whether it be criminal or civil. There are fourteen of you and only twelve of you can decide the case. I keep alternates because a jury trial is an expensive undertaking, both for the State and the Defendant. In the event one of your number becomes ill or a family emergency takes one of you away from us, then the alternate will stand in the place of the missing juror. I keep two alternates when we start a jury on Thursday for a case to be tried on Monday because a lot can happen between now and then, as you might understand.

Now, I want to forewarn you of this; the law says that there are times when the attorneys must take up certain matters, certain issues of law with the Court and the Court alone. And, the Court has to decide that outside the presence of the Jury. So, in any jury trial there will be delays or times when we have to take up those matters outside your presence. Now, we try to keep those to a minimum and keep the time we devote to those to a minimum. But, it will happen and I want you to know it will happen. So, please understand that. The law does require it and it

must be done.

Now, let me move on and give you a thumbnail sketch of how the trial will proceed Monday morning. At 9:00 o'clock, when you arrive, you are to go to the Jury Deliberation Room down the hall on the right. It is the Grand Jury Room. But, we will bring you in, of course, and begin the trial of the case. The attorneys will start with their Opening Statements and the State goes first and then will be followed by the Defense. In the Opening Statements, the attorneys are going to tell you what they expect the evidence to be. Just keep in mind what the attorneys say is not any evidence in this case. But, they will tell you what they expect the evidence to be. After the Opening Statements, we will begin with the presentation of evidence. The State goes first because the State has the burden of proof in this case, as in every criminal case, which is beyond a reasonable doubt. After the State presents all the evidence that it desires and rests, then we will turn to the Defense for any evidence he desires. After he presents his evidence and rests, then you will have heard all the evidence in this case. After all that, the attorneys will

make their Closing Arguments to you.  The State

goes first, followed by the Defense and the State

gets a last opportunity to address you again and

that is because the State has the burden of proof.

After all that, I will charge you with the law

that is applicable in these cases, release the two

alternates and submit the case to you for your

deliberations.  The law says, of course, it will

be your duty to follow all the instructions given

to you by the Court.

     The third topic I want to address briefly

is your role as jurors in these cases.  And to

touch on a couple of things in that regard.  Now,

Ladies and Gentlemen, I mentioned Opening

Statements and Closing Arguments; these are

designed or intended to help you in understanding

the evidence and in applying the law.  But, as I

said, what the attorneys say is not evidence in

the case and what they say is not the law.  You

take your instructions concerning the law from the

Court.  It is your duty as jurors to determine the

facts and to determine the facts from the

testimony and the evidence and any reasonable

conclusions arising from this evidence.  And, in

so doing, you must not engage in any guesswork or

speculation.

In determining what the true facts are from the evidence in this case or these cases, you may take it consideration any natural interest or bias a witness may have as a result of any connection with the case. You may take in consideration any interest or bias a witness may have shown while testifying in this case. You may take in consideration the demeanor of any witness as to whether the witness apparently testified frankly or evasively. You may take in consideration any matter you would in your own everyday affairs in passing upon the truthfulness and accuracy of the testimony in these cases. Weigh the testimony in the light of your own common observation and experience and reach a verdict that will be based upon the evidence or based upon the truth as you determine it from all the evidence in this case.

Now, let's talk about the evidence that you are to consider. The evidence which you are to consider consists of the testimony of witnesses and any exhibits that are introduced and admitted in evidence. The testimony of any witness, that is just any person who appears live before you and

testifies.  An exhibit would be a document, object, photograph, something of that nature that is introduced and admitted in evidence.

The admission of evidence into Court is governed by rules of law.  From time to time it may be the duty of the attorneys to make certain objections concerning certain evidence and it is my duty to rule on those objections as to whether or not you can consider that evidence.  You must not concern yourself with the attorneys' objections or my reasons for these rulings.  You must not consider evidence to which an objection has been sustained or which has been ordered stricken.  No statement or ruling or remark which I may make during the course of this trial is intended to indicate my opinion as to what the facts are, because as I said, you alone determine the facts.  In this determination, you alone must decide upon the believability of the evidence and its importance and value.  In deciding the importance and value of the testimony of any witness in these cases, you may take in consideration the appearance, attitude and behavior of the witness, the interest of the witness in the outcome of the case, the relation

of the witness to any parties in this case, the inclination of the witness to speak truthfully or not, the probability or improbability of the witness's statement and all other facts and circumstances in evidence.  Therefore, you may give the testimony of any witness just such importance and value that you deem it to be entitled to.  You must not be influenced to any degree by any personal feelings of sympathy for or prejudice against either party in this case.  Each party is entitled to the same fair and impartial consideration.

Now, as I said, you shall keep an open mind and shall not decide any issue in this case until after all the evidence has been presented and I have charged you with the law, released the two alternates and submitted the case to you for your deliberations.

Now, Ladies and Gentlemen, that is what I wanted to take up briefly with you this afternoon. I know it has been a long afternoon for you and with that, you are free to go.  And, I will see you Monday morning at 9:00 o'clock.  Return, as I said, this time to the Jury Deliberation Room, which is down the hall on your right.  With that,

have a pleasant weekend and I will see you Monday

morning.  Thank you so much.

       (Thereupon, the Trial Jury was release for

       the weekend with the above instructions

       from the Court.  After that, the following

       proceedings were held outside the presence

       and hearing of the Trial Jury, to-wit:)

       THE COURT:  Gentlemen, is there anything

else?

       MR. DAVIS:  No, sir.

       MR. BLUMENFELD:  No, Your Honor.

       THE COURT:  Okay.  If that is it, we are

adjourned until Monday morning.

       MR. BLUMENFELD:  Thank you, Your Honor.

       THE COURT:  Thank you all.

       (Thereupon, a recess was called and taken

       by all parties for the weekend.  Upon

       completion of said recess, on December 9,

       2002, all parties returned to the presence

       and hearing of the Court Room and the

       following proceedings were held, to-wit:)

       THE COURT:  Gentlemen, are you ready; Mr.

Davis?

       MR. DAVIS:  Yes, sir.

       THE COURT:  Mr. Blumenfeld?

MR. BLUMENFELD: Yes, sir.

THE COURT: Okay. Bring in that Jury.

(Thereupon, the Trial Jury was returned to their places in the Jury Box and the following proceedings were held, to-wit:)

THE COURT: Ladies and Gentlemen, good morning. I trust y'all had a pleasant weekend. We are ready to begin the trial of this case or cases of the State of Alabama Versus Stanley Lee Caudill. As your name is called, just raise your hand and announce your presence, please. I want to make sure all Jurors are here.

(Thereupon, a roll call was taken. After that, the following proceedings were held, to-wit:)

THE COURT: Okay. Now, once again, Ladies and Gentlemen; good morning. I apologize to you for the brief delay. We had a docket call at 8:30 and I was taking pleas of guilty and had another one to go but I told you that I would have you in the Court Room around 9:00 o'clock and it took a few minutes to make a disposition of the other Jurors.

With all that done, we are ready to begin the trial of the cases of the State of Alabama

Versus Stanley Lee Caudill.  As I told you Thursday, we will start with the Opening Statements.  The State goes first and will be followed by the Defense.  Mr. Davis, you may make your Opening Statement to the Jury.

MR. DAVIS:  Thank you, Your Honor.  May it please the Court and Mr. Blumenfeld:  (States the State's Case to the Jury.)

THE COURT:  Thank you, Mr. Davis.  Mr. Blumenfeld, you may make your Opening Statement to the Jury.

MR. BLUMENFELD:  Thank you, Judge Anderson.  Mr. Davis, Ladies and Gentlemen:  (States the Defendant's Case to the Jury.)

THE COURT:  Thank you, Mr. Blumenfeld.  Mr. Davis, call your first witness.

MR. DAVIS:  Call Heather Austin.

<u>STATE'S EVIDENCE</u>

Thereupon,

<u>HEATHER AUSTIN</u>

was called as a witness on behalf of the State of Alabama and after having been first duly sworn, testified as follows, to-wit:

<u>DIRECT EXAMINATION</u>

BY MR. DAVIS:

Q    Tell the Ladies and Gentlemen your name, please.

A    Heather Austin.

Q    If you would, scoot a little closer.

A    Okay.

Q    Heather, how old are you now?

A    Nineteen.

Q    How old were you back in April, 2001?

A    Seventeen.

Q    Tell the Ladies and Gentlemen do you know Stanley Caudill?

A    Yes, sir.

Q    Do you see him in the Court Room?

A    Uh-huh.  (Affirmative response.)

Q    Point him out, please.

A    Right there.  (Witness indicating toward the Defendant as requested.)

Q    Which one, which man?

A    The one with the black sweater on and gray

sweater.

          MR. DAVIS:  Let the Record reflect she has

identified the Defendant.

BY MR. DAVIS:

Q    How do you know Mr. Caudill?

A    He was a family friend and would go to the

auctions.

Q    How long has he been a family friend, to the best

of your recollection?

A    Probably three, four years.

Q    You also said you knew him from the auctions; is

this a particular auction you know him from?

A    They sell miscellaneous items and stuff.

Q    Okay.  Is this particular auction, is there a

location, same place all the time?

A    Different auctions.

Q    Going to these auctions, is that something you do

with your family?

A    Yes, sir.

Q    When you say family friend for three, four years,

is that up until April of 2001 or up until now?

A    Until April of 2001.

Q    Let me take you back to April 17, 2001; is that a

day that sticks out to you?

A    Yes, sir.

Q    And, where were you going to go that day?

A    We was going to an auction.

Q    When you say we, who is we?

A    Me, Stan and my sister Rachel.

Q    Okay.  Y'all called him Stan?  Is that correct?

A    Yes, sir.

Q    And, how old is Rachel?

A    She is eighteen.

Q    How old was she at the time?

A    Sixteen.

Q    Whose idea was it for you to go to the auction?

A    It was all of ours.

Q    Had you been to auctions with Mr. Caudill before?

A    Yes, sir.

Q    Had you been with he and Rachel before?

A    What did you say again?

Q    Had you been - - - you said you had been to

     auctions with them before; had you and Rachel both

     gone with him before?

A    Yes, sir.

Q    What particular auction, where was the auction

     y'all were going to located?

A    Steele City, Florida.

Q    All right.  How did y'all get together?  Did he

come pick you up?

A    Yes, sir.

Q    Where did he pick y'all up?

A    From our house in Enterprise.

Q    Do you recall what route or what way you traveled to try to go to Steele City?

A    167 going towards Hartford.

Q    Anything in particular happen between Enterprise and Hartford?

A    No, sir.

Q    What is the next town after Hartford, that you remember?

A    Bonifay.

Q    Anything in particular happen between Hartford before you got to Bonifay?

A    No, sir.

Q    What happened when you got to Bonifay?

A    We had pulled over at a gas station.

Q    Okay.  Did he pull up to the pump?

A    No, sir.

Q    Where in relation to the front of the store did he pull?

A    We pulled in the back.

Q    Before y'all pulled in the back, had Mr. Caudill made any kind of statement or tell you why he was

stopping there?

A    No, sir.

Q    What happened when he pulled behind the gas
station?

A    We stopped and - - - we stopped and we were
sitting at the back of the gas station and
he - - - he - - - (Witness crying.)

THE COURT:  Do you need a moment?

THE WITNESS:  Just for one minute.  I am
okay.  We pulled behind the gas station and he, he
told us something about the mafia or something and
told us that we, if we didn't have sex with him,
somebody from the mafia would kill somebody from
our family or one of our family members or
something.  And then he showed us the gun he had
in his glove box.

BY MR. DAVIS:

Q    Okay.  All right.  He made a statement about
somebody in the mafia killing a family member if
you don't have sex with him?

A    Yes, sir.

Q    Did he say who or how or when or where?

A    No, sir.

Q    After he made that statement and he showed you his
gun - - -

A       Yes, sir.

Q       - - - do you recall what it looked like?

A       I don't remember, really.

Q       All right.  Let's try this way.  Do you know very
        much about guns?

A       No, sir.

Q       Let's see if we can describe it.  Big, small - - -

                MR. BLUMENFELD:  She testified she doesn't
        remember.

                THE COURT:  I will overrule.  I will allow
        some leeway here.

                MR. BLUMENFELD:  Thank you, Your Honor.

BY MR. DAVIS:

Q       Do you recall whether it was big or small?

A       It was probably this big.  About that big or
        something like that.  (Witness indicating.)

Q       About maybe eight inches?

A       Probably.

Q       Do you recall colors?

A       I think it was black.

Q       Where did he get the gun?

A       Out of his glove box.

Q       Did he tell you why he was getting it out?

A       No, sir.  He just showed it to us.

Q       Did he make any statement when he was getting it

out?

A    No, sir.

Q    You said that he told you the mafia would get your family if you didn't have sex with him.  Did he ever say he would get one of your family members if you didn't have sex with him?

A    No, sir.

Q    How did this statement about the mafia getting family members and him showing you a gun make you feel?

A    Scared and nervous and upset.

Q    How did Rachel act?

A    She was scared, nervous and upset and crying.

Q    How long were y'all parked behind this gas station?

A    Probably ten, fifteen minutes.  I really don't remember.

Q    Prior to this trip with him, did you know that he had a gun before?

A    Yes, sir.

Q    How did you know that?

A    Because we seen it before.

Q    Was it the same one?

A    Yes, sir.

Q    Would kind of truck were you in?

A     It was a Dodge Ram.

Q     Was he driving?

A     My sister was.

Q     And, who was sitting in the middle?

A     I was.

Q     The glove box was right in front of him?  Right?

A     Yes, sir.

Q     And, I will assume he was riding right by the right door?

A     Yes, sir.

Q     After he makes the statement and shows you the gun, where, if anywhere, did y'all go?

A     We started driving to Dothan.

Q     Was Rachel still driving?

A     Yes, sir.

Q     When you got to Dothan, where did y'all go?

A     We went to the motel.

Q     Do you recall what kind of motel?

A     It was a Holiday Inn.

Q     And, what was the particular Holiday Inn near?

A     A Waffle House and I don't remember.  I know it was - - - the motel was like on a corner right here and this Waffle House was kind of like in front of it, I think.

Q     Let me ask you this.  Do you know which part of

town in Dothan that you were in?

A    It was 231 going toward Florida.

Q    Did Mr. Caudill get the room?

A    Yes, sir.

Q    How did he do that?

A    We parked and he got out of the vehicle, took his keys in there with him and he went inside and got a room.

Q    Where was the truck parked in relation to the front door?

A    It was parked in, kind of in front of the front door, but on the side a little bit where he could see.  It was glass and we could still see him.

Q    Do you recall where the gun was at this point?

A    It was still in his glove box.

Q    Tell the Ladies and Gentlemen why at this point y'all didn't jump out of the truck and run?

A    Because I was scared and upset and he could see us.  And, I didn't want to run, because I didn't know where to go for anything.  I was too nervous and upset.

Q    Do you know if the glove box was locked?

A    Yes, sir.

Q    Did you see him lock it?

A    Yes, sir.

Q    And, where was Rachel when he went in?

A    She was sitting beside me.

Q    When he came back out, where did y'all go?

A    We got out and went to the room.

Q    When you got out of the truck, do you know where
     the gun was?

A    He had it with him.

Q    Okay.  What time of the day or night was it?  Do
     you recall?

A    It was at night, but I don't remember what time it
     was.

Q    It was dark?

A    Yes, sir.

Q    When y'all got in the room, what was the first
     thing that happened?

A    All the lights were shut off and me and my sister
     had to go in the bathroom and get naked.

Q    Why did you do that?

A    Because he told us to.

Q    Did you do what he said?

A    (Witness nods her head to the affirmative.)

Q    Why?

A    Because I was scared and nervous and upset.

Q    Was there any lights on at all?

A    No, sir.

Q    Did Rachel go in there and do what he said as well?

A    Yes, sir.

Q    Then what happened?

A    Me and Rachel was in the bathroom and Rachel went in there first.

Q    Why did she go?

A    She, she went in there because she said she wanted to get it over with.

            MR. BLUMENFELD:  I am sorry, I couldn't hear that.  I am sorry.  Can she repeat that?

            THE COURT:  Can you repeat that?

            THE WITNESS:  She wanted to get it over with.

BY MR. DAVIS:

Q    You said he had the gun with him; do you recall how he carried it to the room?

A    No, sir.  I don't remember.

Q    Did you see the gun in the room?

A    Yes, sir.  It was beside the bed on the stand.

Q    One of those little night stands?

A    Yes, sir.

Q    Other than what Rachel may have told you, you don't know what happened right then, do you?

A    No, sir.

Q       Did she come back?

A       Yes, sir.

Q       And, did you go in there?

A       Yes, sir.

Q       Did you go because she came back or because you
        were called?

A       Because she came back.

Q       Once she came back, was she still naked?

A       Yes.

Q       When you went in there, were you naked?

A       Yes, sir.

Q       When you went in to the outer part of the room,
        what, if anything, could you see?

A       I remember, the only thing I remember seeing was
        him laying on, sitting on the bed naked.

Q       Did he say anything to you when you went in there?

A       He said:

                Lay down on the bed.

Q       Then what happened?

A       Then I laid on the bed and he climbed on top
        and - - -

Q       Did you try to get up?

A       No, sir.

Q       Why didn't you try to get up at this point?

A       Because he was laying on top of me and I was too

nervous to move.

Q    Where were your hands?

A    Over my eyes where I couldn't see.

Q    And, while he was on top of you, what is it that

he did?

A    He had sex with me.

Q    When you say he had sex, did he put his penis in

your vagina?

A    Yes, sir.

Q    About how long did that last?

A    Probably five or ten minutes.  Probably five

minutes.

Q    Did you willingly have sex with him?

A    No, sir.

Q    And, are you sure that it was his penis that went

in your vagina?

A    Yes, sir.

Q    After this five minutes had passed, what happened?

A    He got off me and I went to the bathroom and got

dressed.

Q    Did Rachel also get dressed?

A    Yes, sir.

Q    After you left the room, where did you go?

A    We went to Ruby Tuesdays to eat.

Q    Did he ever go back to the hotel office and check

out?

A     No, sir.

Q     When you were at Ruby Tuesdays, did y'all make any effort to tell anybody or try to get away from him there?

A     No, sir.

Q     Can you tell us why?

A     Because I was still nervous and upset and all.

Q     Did either of you or Rachel ever leave the table there at Ruby Tuesdays?

A     No, sir.

Q     After y'all ate, where did you go?

A     We went back to Enterprise to my house.

Q     Do you know where the gun was when y'all were in Ruby Tuesdays?

A     No, sir.

Q     After he took you home, other than Rachel, did y'all tell anybody that had happened?

A     No, sir.

Q     Can you tell us why?

A     I just, I was too scared to tell anybody.

Q     Did you think that he could actually have somebody in your family killed?

A     Yes, sir.

Q     Tell the Ladies and Gentlemen of the Jury why you

thought that?

A    Because his brother-in-law or somebody like that

was in the mafia and I heard the mafia kills

people and stuff.  And, I thought he might have

somebody kill a member of my family or something.

Q    Who told you these stories about the mafia?

A    Stan.

Q    And, was that April 17, 2001, the first time you

ever heard about that from him?

A    No, sir.

Q    Other than being scared, was there any other

reason why you didn't tell anybody any sooner than

you did?

A    No, sir.

Q    Have you previously said that you were scared and

also wanted to forget about it?

A    Yes, sir.

Q    What was it in particular that made you tell

somebody?

A    Well, I didn't - - - the first person I told was

my husband.

Q    When did you tell him?

A    April 25 of 2002.

Q    And, did you go report it then?

A    No, sir.

Q       When was the first time you met with a police

        officer and told them what happened?

A       June of 2002.

Q       And, what happened in June of 2002 that made you

        tell the police or got you to tell the police?

A       Because my sister told her boyfriend at the time

        and he said if - - -

             MR. BLUMENFELD:   I object to what was

        said, judge.

             THE COURT:   Sustained.

BY MR. DAVIS:

Q       Was it a conversation between those two?

A       Yes, sir.

Q       And, not what was said, but based on what was

        said, who did you tell at that time?

A       Who did I tell?

Q       In June.  After Rachel and her boyfriend had this

        conversation, who was it that you told?

A       Told my father.

             MR. BLUMENFELD:   May I approach?

             THE COURT:   Yes, sir.

(Thereupon, an off the Record discussion
was held between the Court and the
Attorneys of Record.  Upon completion of
said discussion, the following proceedings
were held, to-wit:)

BY MR. DAVIS:

Q    After you told your father, did you make a police
     report?

A    Yes, sir.

Q    And, after you made a police report, did they make
     a phone call to Mr. Caudill?

A    Yes.

Q    Was that at the investigator's direction?

A    Yes, sir.

Q    Was that telephone conversation taped, as far as
     you know?

A    (Witness nods her head to the affirmative.)

          MR. DAVIS:  Judge, may I have a minute to
     make sure the investigator is here?

          THE COURT:  Yes, sir.

          (Thereupon, Mr. Davis left the Court Room
     and returned shortly thereafter and the
     following proceedings were held, to-wit:)

          MR. DAVIS:  Mark this as you want to mark
     it, please.

       (Thereupon, State's Exhibit Number 1 was

       marked for identification by the Court

       Reporter.  After that, the following

       proceedings were held, to-wit:)

BY MR. DAVIS:

Q     Let me show you what has been marked as the

      envelope and the tape.  Can you tell the Ladies

      and Gentlemen what that is, please?  (Produces the

      exhibit in question for examination.)

A     (Witness studies the exhibit in question as

      requested.)  It is the telephone conversation of

      me, Heather Austin and Stan Caudill.

Q     Tell the Ladies and Gentlemen are there any marks

      on this particular tape or envelope that lets you

      know you listened to it?

A     It has my initials on the top corner over here.

Q     Have you listened to that tape since the day that

      it was made; I believe around June 6 this year?

A     Yes.

Q     Does the tape, State's Exhibit Number 1, fairly

      and accurately have on it what was said between

      you and Mr. Caudill in that particular day, I

      believe June 8 of this year?

A     Yes, sir.

       MR. DAVIS:  Mark that.

(Thereupon, State's Exhibit Number 2 was marked for identification by the Court Reporter.  After that, the following proceedings were held, to-wit:)

BY MR. DAVIS:

Q    I show you what has been marked as State's Exhibit Number 2.  If you will, take a minute and look at that, please.  (Produces the exhibit in question for examination.)

A    (Witness studies the exhibit in question as requested.)

Q    If you can, tell the Ladies and Gentlemen what it is.

A    It is a, a copy of the tape they had typed down on the - - - what was said upon that tape.

Q    Have you listened to State's Exhibit 1 and compared it to State's Exhibit 2?

A    Yes, sir.

Q    Okay.  And, State's Exhibit 2, has, at least reduced to writing, everything you heard on State's Exhibit 1?

A    Yes, sir.

Q    Let me back up just a little bit and ask a couple more questions.  Did Mr. Caudill say why he was going to take y'all to a motel in Dothan?

A     Because he said the people in the mafia had a room

vacant for him or something like that.  And, that

he supposedly had cameras in there.

MR. BLUMENFELD:  I object to what she is

testifying he said, if it is not on the statement.

No mention about mafia on this tape.

THE COURT:  Overruled.  Gentlemen,

approach.

(Thereupon, the Attorneys of Record and

the Court Reporter approached the Bench as

instructed and the following proceedings

were held out of the hearing of the Trial

Jury, to-wit:)

THE COURT:  He is not asking about the

tape, he is backing up to when they were going to

Dothan.  He is not talking about the tape.

MR. DAVIS:  That is correct.  I don't have

anything to play the tape on, right now.  I am

covering the bases and I will have to come back to

the tape and not take any more at this point.

MR. BLUMENFELD:  Okay.

(Thereupon, the above named individuals

returned to their places in the Court Room

and the following proceedings were held,

to-wit:)

BY MR. DAVIS:

Q    He made a statement about the mafia connection in the room? Is that correct?

A    Yes, sir.

Q    What, if anything else, did he say about that; having a room at that particular motel?

A    That is was, they had, he had got a room there and, because they had some kind of video camera or something like that watching us.

Q    And, as far as you know, you don't know of any tape, do you?

A    No, sir.

        MR. DAVIS: Judge, at this time I don't have any further questions. When I have the ability to play the tape, I would like to recall her.

        THE COURT: Thank you. Cross Examination, MR. Blumenfeld?

        MR. BLUMENFELD: Yes. Thank you, Judge Anderson.

                    CROSS EXAMINATION

BY MR. BLUMENFELD:

Q    Mrs. Austin, you said that you and Rachel went to the auction and that is not the first time that you went with Stanley to the auction? Is that

correct?

A   Yes, sir.

Q   You know how many times you had been with Stanley to auctions prior to this?

A   A pretty lot of times.  Pretty much most of the time we went with him.

Q   Now, help me out a little bit.  When you say a lot of times - - -

A   We would go with him to the auction down in Florida probably about six months to a year.  I don't know exactly how long.

Q   How often would you go with him to the auction?

A   Every Tuesday night with him.

Q   So, you are saying for six months to a year, you went every Tuesday night with him to an auction?

A   Most of the time.  Yeah.

Q   So, between twenty-six and fifty-two times you had gone with him to an auction?

A   Yes, sir.

Q   Up until this night, you apparently had no reason to fear Stanley?  Is that correct?

A   No, sir.

Q   When is the first time he talked to you about the mafia?

A   One night me and my grandmother and all of us was

sitting in the Coffee Kettle in Enterprise and he was talking to us about it.

Q    What did he say about the mafia?

A    That just his wife's brother or something like that, brother-in-law, somebody like that was in it.

Q    Someone like that was in the mafia?

A    His brother or brother-in-law.  His wife's brother or brother-in-law; I don't know which one.

Q    Did he tell you the name of this person?

A    Jimmy?

Q    I am asking you - - -

A    Jamie?

Q    I am asking you.  Jamie, is that what he said?

A    Yes, sir.

Q    How was this brought up?

A    That night at the Coffee Kettle?

Q    Yes, ma'am.

A    I really don't remember.  It was just - - -

Q    How long had you been going to auctions with Stanley before he mentioned the mafia?

A    That time, we haven't, we was going with my grandmother and all them.

Q    How long had you been going with him to auctions prior to that day or night when he talked about