# Court of Criminal Appeals
State of Alabama
Judicial Building, 300 Dexter Avenue
P. O. Box 301555
Montgomery, AL 36130-1555



H.W."BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

RELEASED
AUG 22 2003
CLERK
ALA COURT CRIMINAL APPEALS

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

MEMORANDUM

CR-02-0755   Houston Circuit Court CC-02-1141 and CC-02-1142

Stanley Caudill v. State of Alabama

Baschab, Judge.

The appellant was convicted of two counts of first-degree sexual abuse, violations of §13A-6-66(a)(1), Ala. Code 1975. Applying the firearm enhancement set forth in §13A-5-6(a)(5), Ala. Code 1975, the trial court sentenced him to serve consecutive terms of ten years in prison on each conviction. The appellant did not file any post-trial motions. This appeal followed.

The State presented evidence that the victims, H.A. and R.T.M., were sisters; that, on April 17, 2001, H.A. was seventeen years old and R.T.M. was sixteen years old; that the appellant had been a friend of the victims' family for about three or four years; and that the victims frequently went to auctions with the appellant.

H.A. testified that, on April 17, 2001, she, R.T.M., and the appellant were going to an auction in Steele City, Florida; that her sister was driving; that they stopped at a

EXHIBIT D

gas station in Bonifay, Florida; that the appellant told them that, if they did not have sex with him, somebody from the mafia would kill members of their family; that, after the appellant told them that, he showed them a gun that he had in the glove box of his vehicle; that the appellant's actions made her scared, nervous, and upset; that R.T.M. then started driving to Dothan; that, when they got to Dothan, they went to a Holiday Inn motel; that they parked in front of the motel; that the appellant went inside and rented a room; that, when the appellant went inside, he took the keys to the vehicle with him; that the glove box was locked; that, when the appellant came back, she and R.T.M. got out of the vehicle and went to the room; that the appellant got the gun out of the vehicle; that, when they got to the room, all of the lights were off; that the appellant told her and her sister to go into the bathroom and "get naked"; that she did what the appellant told her to do because she was scared, nervous, and upset; that the gun was in the room on the nightstand beside the bed; that R.T.M. went into the room with the appellant first; that R.T.M. came back into the bathroom; that, after R.T.M. got back, she went into the room with the appellant; that she saw the appellant lying on the bed naked; that the appellant told her to lie down on the bed; that the appellant climbed on top of her; that she did not try to get up because the appellant was on top of her and because she was too nervous to move; that the appellant put his penis in her vagina; that it lasted about five minutes; that the appellant got off of her; that she went back to the bathroom; that she and R.T.M. got dressed; that they left the motel room; and that they were in the motel room between ten and fifteen minutes. (R. 29.) She also testified that the appellant had previously told her stories about the mafia; that the appellant had told her that his brother-in-law was in the mafia; and that she thought that the appellant actually could have somebody in her family killed.

   R.T.M. testified that, on April 17, 2001, she, H.A., and the appellant were going to an auction in Steele City, Florida; that she was driving; that she had to stop at a store in Bonifay, Florida, because the appellant had said something about them making up their minds about going to a motel; that the appellant said something like, "[I]f you and your sister don't have sex with me, then I have to kill one of your family members"; that the appellant pulled a gun out of the glove

2

box; that he said that the mafia was going to make him do it; that she was scared and upset; that the appellant took over driving; that they went to Dothan to a Holiday Inn motel; that the appellant rented a room; that, when the appellant went to the office, he took the keys to the vehicle with him; that she did not run because she was afraid and because she did not think she could get away safely; that the appellant came back to the vehicle; that they all went to the room; that the appellant told her and H.A. to go to the bathroom and to get undressed; that she and her sister did as they were told; that she went into the room with the appellant first; that the appellant had the gun next to the bed; that the appellant was lying in the bed next to the door and was naked; that the appellant told her to lie down; that the appellant touched her breasts and her vagina with his hand; that it lasted about five minutes; that she went back to the bathroom; that H.A. went into the room with the appellant; that H.A. was in the room with the appellant for about ten minutes; that H.A. came back into the bathroom; that they got dressed; and that they left the motel. (R. 69.) She also testified that she did not have any choice other than to let the appellant touch her and that she believed that, if she did not, somebody in her family would be killed.

    The appellant made a statement to Investigator Brian Harvin with the criminal investigation division of the Dothan Police Department. In that statement, the appellant said that he, H.A., and R.T.M. were going to an auction in Steele City, Florida; that, during the ride, they were joking about stopping one night; that they went to a Holiday Inn in Dothan and got a room; that, when they got into the room, he told H.A. and R.T.M. to go into the bathroom and take their clothes off; that, while they were doing that, he undressed except for his underwear and socks; that R.T.M. came out of the bathroom and got on the bed with him; that he rubbed R.T.M.'s stomach, touched her breast, and rubbed her back; that R.T.M. asked him if it was time to get up, and he told her that it was; that R.T.M. got up and went back into the bathroom; that H.A. came out of the bathroom and got on the bed beside him; that he rubbed H.A.'s stomach, legs, and inner thigh area; that he might have brushed against H.A.'s vagina while they were talking; that H.A. also asked him if her time was up; that he never had sexual intercourse with either of the victims; and that he had been impotent for several years. He also stated

3

that he did not think that, after they got to the motel, the victims wanted to be there. He further stated that he had a BB gun on him; that it was in his pants pocket when they were inside the room; and that he never took the gun out or threatened the victims with it.

After H.A. reported the incident to law enforcement authorities, she made a telephone call to the appellant, and law enforcement officers taped the telephone call. During that conversation, the appellant denied having sex with H.A. and said that nothing had really happened in the motel room. However, the appellant acknowledged that he knew that H.A. and R.T.M. did not want to be in the motel room with him that night. H.A. also asked the appellant why he had hurt her and her sister. He said that he did not want to do what he had done; that he had been forced to do it; and that he had been having trouble with someone in Montgomery. He also said, "'You think I was joking about that person. No I wasn't.'" (C.R. 59.)

I.

The appellant argues that the trial court erroneously instructed the jury on the element of forcible compulsion. Specifically, he contends that the trial court did not use the term "immediate" with regard to the fear of death or serious physical injury. We addressed a similar situation in Gunter v. State, 665 So. 2d 1008, 1013-14 (Ala. Crim. App. 1995), as follows:

> "The appellant contends that the trial court erred because it omitted the modifier 'immediate' before 'death or serious injury' in its instruction defining 'forcible compulsion.' Also, the appellant contends that the trial court erred because it did not define 'earnest resistance' or 'serious physical injury.'
>
> "When reviewing jury charges, we must examine the entire charge as a whole, and the language of the charge must be given a reasonable construction, not a strained and unreasonable one. Carroll v. State, 599 So. 2d 1253, 1270 (Ala. Cr. App. 1992), aff'd, 627 So. 2d 874 (Ala. 1993), cert. denied, ___

4

> U.S. ___, 114 S. Ct. 1207, 127 L. Ed. 2d 554 (1994). An inadvertent error in an instruction that does not cause prejudice is not reversible error. Bighames v. State, 440 So. 2d 1231, 1234 (Ala. Cr. App. 1983). Furthermore, this court has held that the statutory definition of rape as 'sexual intercourse with a female by forcible compulsion' is 'so clear and unambiguous that no person intelligent enough to be juror could err as to the meaning.' Parrish v. State, 494 So. 2d 705, 715 (Ala. Cr. App. 1985), quoting Davenport v. State, 426 So. 2d 473, 476 (Ala. Cr. App. 1982).
>
> "We hold that, taken as a whole, the trial court's jury charges adequately instructed the jury on the law in this case. The omission of the word 'immediate' did not vary so much from the statutory definition of 'forcible compulsion' as to prejudice the appellant. Also, the trial court read the definition of 'forcible compulsion' twice to the jury. It did not need to further define every element in that definition. The jury took a common sense view of the instructions and gave the words used therein their plain and apparent meaning."

After reviewing the oral charge as a whole, we find that the trial court adequately instructed the jury on the element of forcible compulsion and that the omission of the term "immediate" did not prejudice the appellant. Therefore, the appellant's argument is without merit.

II.

The appellant also argues that the trial court erroneously applied the firearm enhancement to his sentences. Specifically, he contends that the facts upon which the firearm enhancement was based were not alleged in the indictment and proved to the jury beyond a reasonable doubt. However, he did not present these arguments to the trial court. Therefore, they are not properly before this court. See Ex parte Hale, [Ms. 1010196, October 11, 2002] ___ So. 2d ___ (Ala. 2002); Poole v. State, 846 So. 2d 370 (Ala. Crim. App. 2001).

5

III.

Finally, the appellant argues that the State did not present sufficient evidence to support his convictions. Specifically, he contends that the State did not prove the element of forcible compulsion.

> "A person commits the crime of sexual abuse in the first degree if:
>
> "(1) He subjects another person to sexual contact by forcible compulsion...."

§13A-6-66(a), Ala. Code 1975. Forcible compulsion is defined as

> "[p]hysical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person."

§13A-6-60(8), Ala. Code 1975.

> "In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So. 2d 871 (Ala. Cr. App. 1978), cert. denied, 368 So. 2d 877 (Ala. 1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case. Gunn v. State, 387 So. 2d 280 (Ala. Cr. App.), cert. denied, 387 So. 2d 283 (Ala. 1980). The trial court's denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So. 2d 1020 (Ala. Cr. App. 1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable

6

> doubt. <u>Willis v. State</u>, 447 So. 2d 199 (Ala. Cr. App. 1983); <u>Thomas v. State</u>. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. <u>Young v. State</u>, 283 Ala. 676, 220 So. 2d 843 (1969); <u>Willis v. State</u>."

<u>Breckenridge v. State</u>, 628 So. 2d 1012, 1018 (Ala. Crim. App. 1993).

The State presented evidence that, while they were in the appellant's vehicle, the appellant told H.A. and R.T.M. that, if they did not have sex with him, he would have somebody in the mafia kill one of their family members; that the appellant had previously told the victims that his brother-in-law was in the mafia; that the appellant took a gun out of the glove box of his vehicle and showed it to the victims; that they drove to Dothan, where the appellant rented a motel room; that he took the gun into the motel room; that he told the victims to go to the bathroom and get undressed; that, when they came out of the room, the appellant was naked and lying on the bed; that he told each victim to lie down on the bed when she came out of the bathroom; and that the gun was beside the bed at that time. Both victims testified that they were scared and upset and that they believed that the appellant would kill their family members if they did not do as he said. Based on this evidence, the jury could have reasonably concluded that the appellant subjected the victims to sexual contact by forcible compulsion. Further, "[t]he weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury." <u>Smith v. State</u>, 698 So. 2d 189, 214 (Ala. Crim. App. 1996), aff'd, 698 So. 2d 219 (Ala. 1997). Therefore, the appellant's argument is without merit.

For the above-stated reasons, we affirm the trial court's judgment.

**AFFIRMED.**

McMillan, P.J., and Cobb, Shaw, and Wise, JJ., concur.